Horace W. FRITH, Plaintiff,

v.

ASSOCIATED PRESS, Defendant.

Homer W. FIELDS, Plaintiff,

v.

ASSOCIATED PRESS, Defendant.

Steve B. BROADWAY, Plaintiff,

v.

ASSOCIATED PRESS, Defendant.

George D. BIGBEE, Plaintiff,

v.

ASSOCIATED PRESS, Defendant.

Nos. AC–254–257.

United States District Court
E. D. South Carolina,
Columbia Division.

Sept. 26, 1959.

Kale R. Alexander, Columbia, S. C., for plaintiffs.

Charles W. Knowlton (Boyd, Bruton & Lumpkin), Columbia, S. C., for defendant.

WYCHE, District Judge.

The above cases are before me upon motion of the defendant for judgment on the pleadings in each of the above actions in favor of the defendant upon the ground that on the undisputed facts appearing from the pleadings defendant is entitled to judgment as a matter of law; and in the alternative defendant moves, for summary judgment in favor of defendant upon the ground that there is no genuine issue as to any material fact.

▋ The first cause of action in each case is based upon the alleged violation of the right of privacy.

The facts are established by the pleadings and affidavits and exhibits filed by counsel and are not disputed either in the pleadings or by counter-affidavits.

On Thursday night, December 27, 1956, a group of hooded men waylaid and seized Camden High School Band Director Guy Hutchins on the Charlotte-Camden Highway. They placed a burlap bag over his head and took him some miles to a location near Kershaw County Park where he was severely beaten for a period of some twenty or thirty minutes.

The beating became the subject of considerable public interest, and on January 3, after an extensive investigation by the State Law Enforcement Division, warrants were issued by a Kershaw County Magistrate. Defendant's exhibits, the photostatic copies of the arrest warrants and bonds, show that six men were arrested under warrants signed by an officer of the State Law Enforcement Division. Those arrested were the four plaintiffs in these cases and two other persons.

These exhibits show that the plaintiffs were charged as follows: Steve Broadway (a) conspiracy in violation of Section 16–101, S.C.Code, 1952, (b) assault and battery of a high and aggravated nature; Homer Fields (a) conspiracy in violation of Section 16–101, S.C.Code, 1952, (b) assault and battery of a high and aggravated nature; George Bigbee (a) conspiracy in violation of Section 16–101, S.C.Code, 1952, (b) assault and battery of a high and aggravated nature; Horace W. Frith (a) conspiracy with Broadway, Fields, Bigbee, McManus, and Seegars in violation of Section 16–101, S.C.Code, 1952.

On the afternoon of January 3, 1957, a special press conference was called in the Governor's office to announce these arrests. The press and other news media were advised of the charges against each man by the legal assistant to the Governor and the titular head of the South Carolina State Law Enforcement Division. Officers of the South Carolina State Law Enforcement Division then distributed to the press and television representatives the official photographs and delivered copies to the defendant The Associated Press for dissemination over its wire service.

The Associated Press, upon receiving these photographs, made a composite wirephoto and disseminated them by wire to its subscribers. Under each portrait on these official photographs was a placard reading: "S. C. Law Enforcement (Number) 1 3 57".

The News and Courier the following morning published a factual account of the arrest by that newspaper's capital correspondent and annexed thereto The Associated Press wirephoto above described.

▋▋ The "right of privacy" is the right of an individual to be let alone, to live a life of seclusion, and to be free

from unwarranted publicity. 77 C.J.S. Right of Privacy § 1; 51 Am.Jur., Privacy, § 2. Although some courts have not recognized, and some have repudiated, this cause of action, there is no longer any doubt but that in the State of South Carolina such a right does exist. Meetze v. Associated Press, 230 S.C. 330, 95 S.E. 2d 606.

■ The right of privacy is not absolute, however, and in almost every case, the court must resolve a conflict between the rights of the individual on one hand, and the interests of society and a free press on the other. The public has an interest in the free dissemination of news and information, and the press has a duty to publish such news qualified only by propriety, the law of libel, and the right of the individual to have his private life protected.

■ The two primary limitations placed on the right of privacy are publications of public records and publications of matters of legitimate or public interest.

The publication of these pictures in these cases concerned matter of great public interest and was an official record made public by the Governor of South Carolina, and his highest law enforcement officials.

Plaintiffs place strong reliance on the Louisiana case of Itzkovitch v. Whitaker, 1905, 117 La. 708, 42 So. 228. In this case, the defendant was enjoined from placing the plaintiff's picture in the police files. This case is distinguishable on its facts from the cases at bar because in Itzkovitch the plaintiff was taken into custody by the police, brought to the inspector's office and never informed of the reason for his arrest. From the sparse report of the facts of the case, it would appear that the plaintiff was probably arrested for investigation with no warrant issued for his arrest nor charges preferred.

The pictures complained of by plaintiffs were identification portraits taken by the South Carolina Law Enforcement Division as a routine part of its duties in the investigation of the Guy Hutchins' flogging and the arrest of the plaintiffs in conjunction therewith on charges as aforestated. South Carolina Law Enforcement Division is the statutory investigative arm of the State of South Carolina. 1952 Code of Laws of South Carolina, Sec. 53–3 et seq.

At page 620 of 6 C.J.S. Arrest § 17 the following appears: "In performance of their duty to keep prisoners safe and secure after apprehension, the police may adopt such measures as in their discretion appear to be necessary to the identification and recapture of persons in custody in case they should escape. This has been held to include the photographing of the prisoner and the taking of his Bertillon measurements, and the making of a record thereof."

Other jurisdictions have held that the taking of photographs and measurements prior to conviction was neither an invasion of privacy nor a fit subject for injunction. Downs v. Swann, 1909, 111 Md. 53, 73 A. 653, 23 L.R.A.,N.S., 739. In the 1944 New Jersey case of Fernicola v. Kennan, 136 N.J.Eq. 9, 39 A.2d 851, the reasoning behind this proposition was aptly stated: "The taking of the fingerprints in the first place and the whole process of arrest of a possibly innocent person are a humiliation to which he must submit for the benefit of society. To the same end, the police are justified in retaining such records, in certain cases, after an acquittal or a failure of the Grand Jury to indict. Sometimes a grand jury dismisses a charge because·it seems trivial; sometimes the trial jury must acquit a person because the evidence does not establish guilt beyond a reasonable doubt. In every large community are men who have never been convicted of an indictable offense but whose associations and manner of life are such that the police feel reasonably assured that such a one, unless he turn over a new leaf, will eventually be guilty of a serious crime."

In the later case of McGovern v. Van Riper, 1947, 140 N.J.Eq. 341, 54 A.2d 469, at page 471, the court held that the

general object of protecting the "right of privacy" is the protection of privacy of a *private life* and when such life ceases to be private by reason of indictment and becomes a matter of public interest, such steps as the legislature designates shall be taken by the public officials in the interest of the public for the purpose of the due administration of criminal laws, are not an unwarranted invasion of privacy.

Subsequent to this decision are the holdings in State ex rel. Mavity v. Tyndall, 1947, 225 Ind. 360, 74 N.E.2d 914, and Roesch v. Ferber, 1957, 48 N.J.Super. 231, 137 A.2d 61, to the same effect, the courts stating in effect that the safety of the people is the first law and must prevail as against some of the apparent rights of privacy.

The South Carolina Law Enforcement Division has broad discretion in the investigation of crimes and the apprehension of suspects. The dissemination of photographs by the head of the State Law Enforcement Division to various reporters at a press conference called by him was a proper South Carolina Law Enforcement Division function.

■ In deciding a right of privacy issue a court is, in essence, deciding whether the news organ in question has abused the privileges of a free press. While it may not be determinative in and of itself, the fact that The Associated Press received its information here from the chief executive of the state and the highest law enforcement officers in the state at a news conference called by the Governor for this purpose is of relevance and significance in deciding the question. There is not the slightest suggestion that the actions of the Governor's staff were motivated by any other than the highest and most legitimate motives.

In determining whether the four plaintiffs' privacy was invaded, the numbers have no real relevance or significance. I do not have to determine whether these numbers carried some false implication. The question is whether the publication of the likenesses of the plaintiffs in and of itself was a tortious invasion of their private lives. The numbers and placards neither add to nor detract from plaintiffs' position on this question.

■ The right of privacy does not prohibit the publication of matter which is of legitimate public or general interest. A person may by his acts, achievements, or mode of life become a public figure and lose to some extent the right of privacy that otherwise would be his. There are times when one, whether willingly or not, becomes an actor in an occurrence of public or general interest. When this takes place, he emerges from his seclusion and the publication of his connection with such occurrence is not an invasion of the right of privacy. Meetze v. Associated Press, supra; Berg v. Minneapolis Star & Tribune Co., D.C.Minn., 79 F.Supp. 957; Abernathy v. Thornton, 263 Ala. 496, 83 So.2d 235; 77 C.J.S. Right of Privacy § 3, p. 402.

In the 1958, Oklahoma case of Lyles v. State, Okl.Cr., 330 P.2d 734, the defendant was convicted of burglary and appealed on the ground that the trial judge abused his discretion in allowing television cameras in the court room and allowing the taking of pictures on the scene. The defendant maintained that such publicity in advance of conviction was an invasion of his right of privacy. The Oklahoma Supreme Court affirmed the conviction, stating at page 741: "One need only to cite the law applicable to the question, which unequivocally and repeatedly has stated that when one becomes identified with an occurrence of public or general interest, he emerges from his seclusion and it is not an invasion of his 'right of privacy' to publish his photograph or to otherwise give publicity to his connection with that event. The law does not recognize a right of privacy in connection with that which is inherently a public matter."

The plaintiffs in these cases had become associated with an event of great public interest and for that reason it is difficult to see how their privacy was invaded. In the case of Coverstone v. Davies, 1952, 38 Cal.2d 315, 239 P.2d 876, at page 880, the California Supreme

676

Court said: "The facts concerning the arrest and prosecution of those charged with violation of the law are matters of general public interest. Therefore the publication of details of such official actions cannot, in the absence of defamatory statements be actionable." See, also, Abernathy v. Thornton, supra.

The beating of Guy Hutchins by a group of hooded men aroused great public interest. The public of South Carolina desired to know what was being done about it. Consequently a press conference was called in the Governor's office to report the arrests of the plaintiffs to the news media, knowing that the result would be the publication of the pictures and information disseminated by the Governor's legal assistant. The Associated Press and its member newspapers did nothing more than report to the public of South Carolina and other states the facts in the arrest story as it was related to them. The public had a right to know the facts and this right in these cases was paramount to that of the plaintiffs. By the issuance of a warrant and the arrest of the plaintiffs, they became figures of public interest. As such the publication of their pictures was not an unwarranted invasion of their privacy.

For the foregoing reasons, it is

Ordered, that summary judgment in the first cause of action be and the same is hereby granted in favor of the defendant The Associated Press in each of the above entitled cases.

The second cause of action in these cases purports to allege a cause of action for libel based upon the publication in The News and Courier of an account of the arrest of the plaintiffs, as more fully alleged in the complaints, and the annexation thereto of the defendant's wirephoto of the plaintiffs with a placard hanging from their necks reading as follows: "S. C. Law Enforcement (Number) 1 3 57".

■ For its defense to the libel cause of action in these cases, the defendant asserts the bar of the appropriate South Carolina Statute of Limitations. Under Section 10-145, S.C.Code of Laws, 1952, an action for libel must be commenced within two years.

■ In this case I must look to local law to find the cause of action on which suit is brought. Since this cause of action is based upon the common law as interpreted by the South Carolina Supreme Court, the measure of it is to be found only in the local law; it requires the same burden and is subject to the same defenses in the federal court as in the state court; it accrues and comes to an end when local law so declares. Where local law qualifies or abridges it the federal court must follow suit; otherwise, there is a different measure of the cause of action in one court than in the other, and the principle of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, is transgressed.

I can draw no distinction in these cases because local law brought the cause of action to an end after, rather than before, suit was started in the federal court; in both instances local law created the right which the federal court was asked to enforce; in both cases local law undertook to determine the life of the cause of action. I cannot give it longer life in the federal court than it would have had in the state court without adding something to the cause of action. I cannot do that consistently with Erie R. Co. v. Tompkins. Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520.

Section 10-101, S.C.Code of Laws, 1952, is as follows: "An action is commenced as to each defendant when the summons is served on him or on a codefendant who is a joint contractor or otherwise united in interest with him. An attempt to commence an action is deemed equivalent to the commencement thereof, within the meaning of this Title, when the summons is delivered, with the intent that it shall be actually served, to the sheriff or other officer of the county in which the defendant or one of them usually or last resided or, if a corporation be defendant, to the sheriff or other officer of the county in which such corpora-

tion was established by law, where its general business was transacted or where it kept an office for the transaction of business."

This statute is an integral part of the South Carolina Statute of Limitations.

I had a similar question before me in the case of Macri v. Flaherty, D.C., 115 F.Supp. 739, while sitting by designation in this district.

The complaints in these cases allege that the libel occurred on January 4, 1957. The Statute of Limitations of South Carolina would then run through January 4, 1959. Since this date fell on a Sunday, the statute ran through Monday, January 5, 1959. The complaints were filed in the office of the Clerk of Court for the Eastern District of South Carolina, in Columbia, South Carolina, on Saturday, January 3, 1959. On Monday, January 5, 1959, they were deposited in the mail addressed to the United States Marshal in Charleston, South Carolina, arriving there on January 6, 1959. The earliest date that the papers can be found in the hands of the United States Marshal for service is January 6, 1959, one day after the expiration of the State Statute of Limitations.

The United States Marshal is vested by federal statute with all the powers which the Sheriff has in the State in which his district lies. The delivery of the summons and complaint to the Marshal for service upon the defendant was equivalent to a similar request upon the Sheriff to perform a like service. Macri v. Flaherty, D.C., 115 F.Supp. 739.

It will be noted that Section 10–101, South Carolina Code of Laws, 1952, provides that an attempt to commence an action is determined equivalent to its commencement when the summons is delivered to the "sheriff or other officer of the county" in which the defendant resides.

It is my opinion that delivery to the Clerk of the United States District Court is not the equivalent of delivery to the Sheriff or Marshal. The functions of the Clerk and Marshal are separate and entirely independent of each other. The Clerk has no authority in connection with the service of process, except to deliver the summons and complaint for service to the Marshal or to a person specially appointed to serve them. See Rule 4(a), Rules of Civil Procedure, 28 U.S.C.A. The Clerk is not a person embraced in the meaning of the words "or other officer of the county". It is my opinion that "or other officer of the county" in the State Statute was intended by the Legislature of South Carolina to mean "or other officer of the county authorized to serve process" such as a deputy sheriff, magistrate's constable, etc. I do not see how the Legislature could have intended "other officer of the county" to be the Superintendent of Education, or the Treasurer, or the Auditor, or the Clerk of Court, of the County, for instance.

For the foregoing reasons, it is my opinion that this cause of action in each of these cases is barred by the South Carolina Statute of Limitations, and that judgment should be entered in each case on this cause of action for the defendant, and

It is so ordered.