**Charles WILLIAMS, Pro Ami, Appellant,**

v.

**KCMO BROADCASTING DIVISION—
MEREDITH CORPORATION,
Respondent.**

**No. 25491.**

Kansas City Court of Appeals,
Missouri.

Oct. 4, 1971.

Allan R. Browne, of Ennis, Browne, Martin & Tapp, Kansas City, for appellant.

William L. Turner, of Gage, Hodges, Kreamer & Varner, Kansas City, for respondent.

HOWARD, Judge.

This is an action for invasion of privacy growing out of a television news broadcast. The trial court sustained defendant's motion for summary judgment and the appellant has duly appealed to this court. We shall refer to the parties as they appeared below.

There are no controverted issues of fact in this case. On January 16, 1969, the plaintiff, a high school senior without any prior arrest record, came downtown in Kansas City, Missouri, for the purpose of answering an ad for a job. He encountered two fellow students and since it was too early to apply for the job, they agreed to go to the Jackson County Courthouse in Kansas City, Missouri, to observe a trial. Plaintiff, together with five other colored youths, was arrested by Kansas City police officers in the corridor of the seventh floor of the courthouse. All six of those arrested were taken to the ground floor of the courthouse and out the back door onto the parking lot with their hands above their heads. They were searched with their hands against a police vehicle and then placed therein. The defendant's news personnel filmed their emergence from the courthouse and their search and entrance into the police vehicle. Plaintiff was thereafter booked at the police station and placed in a "line-up". He was released several hours later without any charges being filed. He had not participated in any crime. The film of this event was shown on the 10:00 P.M. television newscast that night, together with a verbal commentary which lasted for seventeen seconds. This commentary was as follows:

"Kansas City police surrounded the Jackson County Court House today, and took six young men into custody following a search of the building.

"Three of them have since been released, but two adults and one juvenile remain in custody, and will be charged tomorrow in connection with last week's holdup of a finance company office at 219 East 12th. All six walked past that office today and three were recognized by the manager as the holdup men. He followed them to the Court House, and then alerted police. Why the six went to the Court House isn't known."

Plaintiff's face was recognizable in the film. He was told by at least nineteen persons that they had seen and recognized him on television.

Plaintiff's arrest occurred during the noon hour; the television newscast occurred at 10:00 P.M. that night; and he was released by the police at 12:45 A.M. the next morning.

Plaintiff's brief contains only one point relied upon. It consists of a rambling discourse covering slightly more than one page of the brief. It in no way constitutes a brief and concise statement of the action or the ruling of the trial court claimed to be erroneous as required by Civil Rule 83.-05, V.A.M.R. However, it appears that plaintiff's contention is that the film showing plaintiff being searched by uniformed policemen with his hands high against a police vehicle showed him in a humiliating position and that even though the event might be a newsworthy one which was a

matter of legitimate public interest, plaintiff's right of privacy was invaded by showing him in an unnatural, offensive and humiliating position which would offend a person of normal sensibilities.

Missouri has recognized, at least since the 1911 decision of Munden v. Harris, 153 Mo.App. 652, 134 S.W. 1076, the so-called common law cause of action for an invasion of privacy. In Barber v. Time, Inc., 348 Mo. 1199, 159 S.W.2d 291, the court recognized that newspapers, radio and television stations, in their dissemination of news, had a right to comment upon news of public concern. However, where a matter was outside the scope of proper public interest revelation of strictly private matters might give rise to a cause of action for invasion of privacy. The court said:

"* * * If the court decides that the matter is outside the scope of proper public interest and that there is substantial evidence tending to show a serious, unreasonable, unwarranted and offensive interference with another's private affairs, then the case is one to be submitted to the jury. * * *"

In Biederman's of Springfield, Inc. v. Wright, Mo., 322 S.W.2d 892, l.c. 897, the court held that the "publication of a private matter with which the public has no proper concern" would give rise to a cause of action for invasion of privacy.

The most recent Missouri case bearing on our problem, to which we have been cited or which we have discovered through our own research is Langworthy v. Pulitzer Publishing Company, Mo., 368 S.W.2d 385. In this case the plaintiff reported to the police that his house had been broken into and certain property stolen. The ensuing police investigation resulted in the apprehension of a group of very young children who were responsible therefor. The defendant published a "tongue in cheek" account of this event which, to say the least, was not complimentary to plaintiff. He duly sued the newspaper and on appeal, contended that the article invaded his right of privacy (among other contentions). Our supreme court held that the "report and the resulting action of the police was properly a matter of public interest and defendant could comment thereon in its newspaper." The court pointed out that where we are dealing with publication of private affairs, a cause of action for invasion of privacy may be created where such publication constitutes unwarranted and offensive interference with such private rights. However, the court held that no action for damages lies against a newspaper for mere inaccuracy in reporting when the publication does not constitute libel. The court reiterated that even if the report of crime was incomplete and inaccurate it was a matter of public concern which the newspaper could properly publicize.

These Missouri cases are in line with the prevailing authority throughout the country. If the publication reports a matter concerning which the public has no proper interest, then publication thereof may create a cause of action for invasion of the right of privacy. See, among the many cases, Leverton v. Curtis Publishing Company (D.C.E.D.Pa), 97 F.Supp. 181; Samuel v. Curtis Publishing Company (D.C.N.D.Cal.), 122 F.Supp. 327; Daily Times Democrat v. Graham (Ala.Sup.), 276 Ala. 380, 162 So.2d 474; Lambert v. Dow Chemical Company (La.App.), 215 So.2d 673; and Rice v. Winkelman Brothers Apparel, Inc., 13 Mich.App. 281, 164 N.W.2d 417.

These cases indicate that even though all of the other elements of a cause of action for invasion of privacy may be present, the plaintiff cannot recover unless the publication is such that the defendant should realize that a person of reasonable sensibilities would be humiliated thereby. The law does not protect the overly sensitive and if a reasonable person would not be humiliated by the publicity, no recovery can be had. See Prosser, Law of Torts, Third Edition, Section 112, page 836; Samuel v. Curtis Publishing Company (D.

C.N.D.Cal.), 122 F.Supp. 327; and Gill v. Hearst Publishing Company, 40 Cal.2d 224, 253 P.2d 441.

If anything, the doctrine laid down in the Missouri cases of Barber v. Time, Inc., and Langworthy v. Pulitzer Publishing Company, supra, that before recovery can be had, it must be shown that publication shows a "serious, unreasonable, unwarranted and offensive invasion of private affairs" places a heavier burden on the plaintiff than do many of the other jurisdictions.

In contrast to the foregoing cases, the authorities from the various jurisdictions seem to be in agreement that where the publication concerns a matter of legitimate public interest, there is no cause of action for invasion of privacy. See Berg v. Minneapolis Star & Tribune Company (D.C. Minn.), 79 F.Supp. 957; Leverton v. Curtis Publishing Company (D.C.E.D.Pa.), 97 F.Supp. 181; Samuel v. Curtis Publishing Company (D.C.N.D.Cal.), 122 F.Supp. 327; Frith v. Associated Press (D.C.E.D.S.C.), 176 F.Supp. 671; Aquino v. Bulletin Company, 190 Pa.Super. 528, 154 A.2d 422; Jacova v. Southern Radio and Television Company (Fla.Sup.), 83 So.2d 34; Metter v. Los Angeles Examiner, 35 Cal.App.2d 304, 95 P.2d 491; Coverstone v. Davies, 38 Cal.2d 315, 239 P.2d 876; Gill v. Hearst Publishing Company, 40 Cal.2d 224, 253 P. 2d 441; Hubbard v. Journal Publishing Company, 69 N.M. 473, 368 P.2d 147; and Jones v. Herald Post Company, 230 Ky. 227, 18 S.W.2d 972.

The privilege of giving publicity to matters of general public interest applies even though the individual publicized may have been drawn out of his seclusion and become involved in a noteworthy event involuntarily and against his will and over his protest. Thus, Prosser, Law of Torts, 3rd Ed., Section 112, page 847, says:

"Caught up and entangled in this web of news and public interest are a great many people who have not sought publicity, but indeed, as in the case of any accused criminal, have tried assiduously to avoid it. They have nevertheless lost some part of their right of privacy. The misfortunes of the frantic victim of sexual assault, the woman whose husband is murdered before her eyes, or the innocent bystander who is caught in a raid on a cigar store and mistaken by the police for the proprietor, can be broadcast to the world, and they have no remedy. Such individuals become public figures for a season; and 'until they have reverted to the lawful and unexciting life led by the great bulk of the community, they are subject to the privileges which publishers have to satisfy the curiosity of the public as to their leaders, heroes, villains and victims.' * * *"

Such is also the holding of other jurisdictions in such cases as Leverton v. Curtis Publishing Company (D.C.E.D.Pa.), 97 F. Supp. 181; Frith v. Associated Press (D. C.E.D.S.C.), 176 F.Supp. 671; Jones v. Herald Post Company (Ky.App.) 18 S.W. 2d 972; Jacova v. Southern Radio and Television Company (Fla.Sup.) 83 So.2d 34; and many others.

As heretofore noted, complaints concerning crime and subsequent police action and the apprehension of persons responsible therefor have been held to be matters of proper public concern by our Supreme Court in Langworthy v. Pulitzer Publishing Company, Mo., 368 S.W.2d 385. The conclusion in other jurisdictions where similar matters have been considered are in conformity with this holding. See Frith v. Associated Press (D.C.E.D.S.C.), 176 F. Supp. 671; Jacova v. Southern Radio and Television Company (Fla.Sup.), 83 So.2d 34; and Coverstone v. Davies (Cal.Sup.), 239 P.2d 876. In Berg v. Minneapolis Star & Tribune Company (D.C.Minn.), 79 F. Supp. 957, it was held that publication of plaintiff's picture together with a news account of a child custody hearing which was part of a divorce proceeding did not give rise to a cause of action for invasion of privacy because it concerned a matter of

legitimate public interest. In Hubbard v. Journal Publishing Company (N.Mex.Sup.), 368 P.2d 147, it was held that a third party, who was mentioned in a news story about a juvenile commitment, had no cause of action for invasion of privacy.

Plaintiff's contention that he has a cause of action for invasion of privacy because he was shown in an unnatural or offensive and humiliating pose which would offend a person of normal sensibilities applies only to cases wherein publicity was given to matters which were not the subject of legitimate public interest. This doctrine does not apply to publicity concerning newsworthy events. Thus, in Daily Times Democrat v. Graham (Ala.Sup.), 162 So.2d 474, the defendant published plaintiff's picture in connection with a general story concerning a local fair. Plaintiff had taken her children to the fair and as they emerged from the "Fun House" a jet of air blew her skirt above her waist and exposed her undergarments and legs from the waist down. The court held that this was not publication of an item of legitimate public interest and that the publication of such a picture indecently exposing plaintiff created a cause of action for the invasion of right of privacy. In Lambert v. Dow Chemical Company (La. App.), 215 So.2d 673, plaintiff was an employee of defendant who was injured on the job. Pictures of his wound were taken at the hospital and shown by the defendant company at its safety meetings. The court determined that this was not a matter of general public interest and that such publication of the "ghastly" photograph was reasonably calculated to embarrass the plaintiff and constituted a cause of action for the invasion of privacy. On the other hand, in Leverton v. Curtis Publishing Company (D.C.E.D.Pa.), 97 F.Supp. 181, the court pointed out that where the plaintiff had become involved in a newsworthy event, a cause of action for invasion of privacy would not result from "pictures which startle, shock, and even horrify * * * provided they are not libelous or indecent. * * *"

In the case at bar, plaintiff was involved in a noteworthy event about which the public had a right to be informed and which the defendant had a right to publicize. This is true even though his involvement therein was purely involuntary and against his will. Of the many cases in this field, we believe that Jacova v. Southern Radio and Television Company (Fla.Sup.), 83 So.2d 34, is most in point. This case involved a television newscast which included a showing of a motion picture of a gambling raid on a newsstand which was suspected of being a "bookie joint". The plaintiff innocently got into the middle of this raid when he went to the newsstand to buy a paper. He was backed up against the wall and questioned by the police who thought he was the proprietor. The television picture showed him while he was being questioned by the police. The Florida court held that the defendant was privileged to publicize such a newsworthy event and even though plaintiff's involvement was absolutely innocent and involuntary, no cause of action for invasion of privacy resulted. We believe that the authority of this case, together with the doctrine expressed in the Missouri cases of Barber v. Time, Inc., Mo., 159 S.W.2d 291 and Langworthy v. Pulitzer Publishing Company, Mo., 368 S.W.2d 385, require us to hold that the record in the case at bar shows that plaintiff has no cause of action for invasion of privacy. Neither the picture nor the oral commentary presented plaintiff in an indecent light. He was undoubtedly embarrassed by the publicity given to his arrest but such does not create a cause of action for invasion of privacy and the picture showing him being searched merely depicted a normal incident to such an arrest.

There are a few cases which use language which might support plaintiff's theory that revealing plaintiff in an abnormal and embarrassing position would create a

**6** ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

cause of action for invasion of privacy even where it was a part of publicity given to a matter of public interest. See Leverton v. Curtis Publishing Company (D.C.E. D.Pa.), 97 F.Supp. 181; Berg v. Minneapolis Star & Tribune Company (D.C.Minn.), 79 F.Supp. 957; and Aquino v. Bulletin Company (Pa.Super.), 154 A.2d 422. However, in each instance, this language was simply used to limit general statements or to describe the pictures involved and had no applicability to the issues presented and decided.

In Hubbard v. Journal Publishing Company (N.Mex.Sup.) 368 P.2d 147, a newspaper article publicized a court order committing a 16-year old boy for running away from home and having previously sexually molested his younger sister. The sister brought suit for invasion of her privacy. The court held that since she was involved in a matter of public interest (as the victim), such publicity did not give rise to a cause of action for invasion of privacy.

In addition to the foregoing, there is some authority that reporting events which take place in public cannot give rise to a cause of action for invasion of privacy; this because the events are public to start with and the news report merely informed the listening or reading audience of matters which the public was free to observe. See, in this connection, Prosser, Law of Torts, 3rd Ed., Section 112, page 836, and Gill v. Hearst Publishing Company (Cal. Sup.), 253 P.2d 441.

For all of the foregoing reasons, we conclude as a matter of law that the record demonstrates that plaintiff has no cause of action against defendant for invasion of privacy and that, therefore, the trial court was correct in rendering judgment for defendant on its motion for summary judgment.

Affirmed.

All concur.