Patricia C. BULLER and Roberto Roldan, Plaintiffs-Appellants,

v.

The PULITZER PUBLISHING CO. and Florence Shinkle, Respondents-Defendants.

No. 47271.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 4, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 9, 1985.

Application to Transfer Denied Feb. 26, 1985.

Joseph A. Fenlon, Clayton, for plaintiffs-appellants.

Robert B. Hoemeke, St. Louis, for respondents-defendants.

KELLY, Presiding Judge.

■ Patricia C. Buller and Roberto Roldan, plaintiffs, appeal from an order of the Circuit Court of the City of St. Louis sustaining defendants' motion to dismiss their petition on the grounds it failed to state a claim against the defendants. Plaintiffs appealed. *Hasemeier v. Smith*, 361 S.W.2d 697, 699 [1] (Mo. banc 1962). *Hill v. General Motors Corporation*, 637 S.W.2d 382, 384[1] (Mo.App.1982). On appeal, in determining whether plaintiffs have stated a cause of action we assume every pleaded fact as true and take every favorable inference which may be reasonably drawn from the facts pleaded. *Hill*, supra, at p. 384; *Rook v. Public School Retirement System, etc.*, 593 S.W.2d 905, 906[2] (Mo.App.1980).

Plaintiffs' joint petition contained five counts. The first three Counts were concerned with plaintiff Buller's claim for (1) libel, (2) intentional interference with business expectancies, and (3) invasion of privacy. Plaintiff Roldan's Counts were for (4) libel and (5) invasion of privacy. Their claims against the Pulitzer Publishing Company and one of its reporters, Florence Shinkle, have its genesis in a newspaper article which appeared in the Everyday section of the Sunday, December 26, 1982, issue of the St. Louis Post-Dispatch, and entitled "The Future Lies Ahead." The article dealt with psychics and their practices in foretelling future events. Plaintiffs were two of five psychics discussed at length and identified by name in the article.

Plaintiff Buller's psychic practice was described in detail in defendant's article and she claims she was ridiculed in a cartoon which accompanied the article and that she was inferentially described as being a tax-evader.

Plaintiff Roldan was described in the article as a "voodoo practitioner" and a practicer of "voodoo magic." [1]

## COUNT I and IV

Plaintiff Buller's first Count identifies the defendants and the news article and attaches a copy of same to the petition as "Exhibit A"; alleges that the article was written expressly for the purpose of bringing her and other psychics into ridicule by containing defamatory statements, innuendos and misrepresentations known to the defendants to be false; that she is, and for years had been, engaged in the business of giving psychic readings for fees and that she is known primarily by her reputation and referrals; that the drawing which accompanied the article was intentionally and falsely designed to discredit her in her profession and to pass her off to the public as eccentric and a tax evader. She set out the words used which she claimed charged her by innuendo with being a tax evader—"The price for a consultation is $20.00 in cash" and in discussing the psychic business stated, "How successful, it's hard to calculate since many payments are still in cash, unrecorded, unknowable forever to the IRS."—. She further alleged that she was falsely represented as a trickster and a fraud by referring to the cartoon which she claims presented her as giving readings while seated in bed wearing a ridiculous costume with charts in her lap, who conducted her business as if it were an assembly line, and whose sole purpose was the acquisition of money with little or no concern for her clients, together with the use of the term "hokey," "bizarre costumes," and "crystal ball". As a direct result of all of the above she claims that she has been damaged in her character, reputation and business, dis-

1. Webster's Third New International Dictionary gives, among others, the following definitions:
*Voodoo:* one who deals in spells and necromancy; a sorcerer's spell.
*Voodooism* or *Voudism:* 1. a religion originating in Africa as a form of ancestor worship, practiced chiefly by negroes of Haiti and to some extent other West Indian Islands and the U.S., and characterized by propitiatory rites and use of the trance as a means of communicating with animistic deities. 2. the practice of black magic.

credited in the community, falsely accused of being a charlatan and tax evader; that these statements and the pictured representations were made by the defendants knowing them to be false and in reckless disregard of the truth and for the purpose of discrediting her. She prayed for compensatory damages of $2,000,000 and punitive damages of $4,000,000.

Plaintiff Roldan's Count IV adopted by reference the paragraph of plaintiff Buller's petition identifying the defendants and the news article; alleged that the article describes him as a "voodoo practitioner" and a practicer of "voodoo magic," that these descriptions are false, were known to be false, and were published by defendants in reckless disregard of the truth. He prayed $1,000,000 actual damages.

■ Published words in written communications which are defamatory without the aid of extrinsic facts are libelous per se and as such are actionable. *Langworthy v. Pulitzer Publishing Company*, 368 S.W.2d 385, 388[1] (Mo.1963).

■ Under Missouri law, certain types of written statements constitute libel per se. One such type of libel per se is a publication which tends to injure a person in his business or profession. A long line of Missouri cases has clearly established that this kind of written statement is actionable, provided it meets certain standards. *Jacobs v. Transcontinental & Western Air, Inc.*, 216 S.W.2d 523, 525 (Mo.1948); *Coonis v. Rogers*, 429 S.W.2d 709, 714[8] (Mo.1968); *Anton v. St. Louis Suburban Newspapers, Inc.*, 598 S.W.2d 493, 496[7] (Mo.App.1980).

The established rule is that where the plaintiff contends the language affected his business, the words must directly tend to injure or prejudice his profession, trade, business, or employment by imputing want of knowledge, skill, capacity, or fitness to perform or discharge the duties thereof. *Heitzeberg v. Von Hoffmann Press*, 100 S.W.2d 307, 309[3] (Mo.1937); *Greening v. Klamen*, 652 S.W.2d 730, 735[15] (Mo.App. 1983). The language must also be defamatory of the plaintiff in the line of his trade or calling in that it imputes fraud, want of integrity or misconduct. *Brown v. Kitterman*, 443 S.W.2d 146, 154[10] (Mo.1969); *Greening*, supra, at 735.

■ In determining whether words alleged to be libelous per se are in fact defamatory, they must be read in connection with the whole publication rather than in isolation, and it is permissible to attach the whole publication to the petition as an exhibit. *Missouri Church of Scientology v. Adams*, 543 S.W.2d 776, 777[3] (Mo. banc 1976). Whether allegedly libelous words or statements are libelous per se is a question of law which the court may decide on a motion to dismiss. *Missouri Church of Scientology*, supra, at p. 777.

In light of these principles we evaluate Buller's claim of libel.

We observe that Buller alleges in Count I of her petition that she is engaged in the profession of providing psychic readings and that defendants' publication of the news article directly discredited her in her profession. The question is then whether, as a matter of law, the drawing and news article referred to in plaintiff's petition, imputes a want of knowledge, skill, capacity, or fitness to perform or discharge her duties thereof *and* imputes fraud, want of integrity or misconduct, and thus constitutes libel per se.

■ Buller alleges that the article falsely presented her as a tax evader by stating that her consultation fee is paid in cash and by noting that within the profession many payments are made in cash and unrecorded with the IRS. To obtain a feeling of the context we read the publication as a whole. In the context in which they appear in the article, the two phrases are, first, not defamatory, and second, even if defamatory, do not necessarily impute fraud, want of integrity or misconduct in Buller's business. They do not present plaintiff as a tax evader. The phrase stating the nature of payment in the business is not made in reference to Buller. The phrase mentioning the form of payment required for Bul-

ler's services does nothing more than note this fact; it does not imply that Buller fails to report her earnings.

■ The article notes that Buller is a popular psychic. Merely stating her fees and the method of payment for her services is consistent with a statement of her popularity. A writing claimed to be libelous must be given its ordinary meaning in the plain and popular sense. "Words claimed to be libelous will be construed fairly by their natural import, according to the ideas they were calculated and intended to convey to those to whom they were addressed...." *Dienerf v. Star-Chronicle Publishing Co.*, 230 Mo. 613, 132 S.W. 1143, 1148 (1911). We conclude that no defamatory meaning leaps out of these two phrases, seemingly pulled at random from the context of the article. The average reader would most likely note Buller's fees in reference to her popularity. However, even were these phrases defamatory, they would not impute fraud, want of integrity nor misconduct. Buller could conceivably be a competent and trustworthy psychic and also be an income tax evader; her income tax reporting practices have no bearing on her ability to be a qualified psychic. As this court has recognized in earlier cases, this is an important distinction. Alleged wrongdoing may be published, but may not be of a nature to affect Buller's ability to render psychic services competently. *Jacobs*, supra at p. 526; *Baldwin v. Walser*, 41 Mo.App. 243, 245[1] (1890).

■ This does not mean, however, that Buller's petition fails to state a claim in libel. On the contrary, we find that the drawing and article meet the criteria for libel per se in a business or profession.

Defendants claim that the drawing does not purport to specifically identify Buller. This argument carries no water. Without addressing the libelous content of the drawing we find that it clearly identifies Buller. The phrase spoken by the "client" depicted in the drawing is a summary of Buller's reading by the author. The "psychic" portrayed in the drawing is obviously in her bedroom as Buller was described in the article, and the "psychic" asks for the same fee in the article. In addition, Buller is the only psychic quoted in the article as charging a specific fee.

The question for decision is whether the article's drawing depicts Buller in a defamatory manner in relation to her profession. The drawing, based on information elicited in the article, portrays Buller as a bizarrely dressed figure, seated in bed, and surrounded by an incomprehensible array of charts and diagrams. This, in and of itself, casts some doubt on the skill or capacity of Buller as a psychic. The confused, even dismayed expression on the "client's" face does little to dispel that image. The "reading" just given the "client" is obviously meaningless and the "psychic" does nothing to remedy this. Clearly the drawing imputes that Buller has no skill or capacity as a psychic.

There is a second prong of this type of libel per se we now consider. That is the imputation of fraud, want of integrity or misconduct. Not only does the drawing depict Buller as an incompetent, it goes on to depict her as having a callous and unfeeling attitude toward her clients. Faced with the client's bewilderment the psychic portrayed in the drawing asks for her money and proceeds to summon the next client. According to the drawing, Buller has no integrity at all with respect to her clients, and may even be defrauding them by accepting money for useless predictions.

In our opinion, defendants' drawing cunningly depicted a drawing based on the information elicited in the article focusing uniquely on Buller's business and her lack of skill and integrity. There is in our minds no question that the article and drawing are actionable as libel per se.

The only remaining issue is whether this libelous publication is protected as a statement of opinion under the First Amendment to the United States Constitution and Article I, Section 8 of the Constitution of Missouri. *Gertz v. Welch*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

Under the controlling constitutional standards, public officials, public figures and private persons suing media defendants must establish that the defendant published a false statement of fact. *Gertz,* supra, at p. 347, 94 S.Ct. at p. 3010; *Anton,* supra, at p. 498. We said in *Anton,* supra, at p. 498 and in *Iverson v. Crow,* 639 S.W.2d 118, 119[2] (Mo.App.1982) that if a defendant bases his expression of a derogatory opinion of the plaintiff on his own statement of false and defamatory facts, he is subject to liability for the factual statement but not for the expression of the opinion. It is on this basis that we hold that Buller successfully alleges defendants' liability for libel per se in the publication of the article and drawing. Defendants published false facts about Buller in that the drawing is a drawing of her and, as such depicts her in a false manner. In other words, Buller alleges in her petition, that she does not dress or behave in the manner depicted in the drawing. It is one thing for a defendant to set out facts and also set out its opinion, whether or not that opinion is false, and still permit the reader to form his or her opinion. However, in this case, the facts set out visually in the drawing go beyond the protection afforded opinion.

We hold therefore that the trial court erred in sustaining defendants' motion to dismiss Count I of Buller's petition for failure to state a claim.

We move now to consider Roldan's claim of libel, wherein he alleges that he has been damaged in his character and reputation by defendants' description of him as a "voodoo practitioner" and a "practicer of voodoo magic." Roldan, in his petition, fails to make any reference to his business or trade. The question then is whether these specific phrases defame him as an individual rather than in his business capacity.

In order to be libelous per se in these circumstances, the defamatory words must reflect on Roldan's integrity, his character and his good name and standing in the community. *Coots v. Payton,* 280 S.W.2d 47, 54[14] (Mo.1955).

On their face, we do not find that the words "voodoo practitioner" and "practicer of voodoo magic" are defamatory. These words are ambiguous in that while they might create connotations of evil and wrongdoing, they might also create a connotation of mysterious power and special ability.

A petition based on published words not defamatory per se may, however, state a cause of action for what is libel per quod. However, to do so, the petition must allege intrinsic facts showing that although the words published are not libel per se, they were in fact defamatory; and it is the settled rule in this state that in such a situation special damages must be pleaded in order for the petition to state a cause of action. *Langworthy,* supra, at p. 388. As Roldan's petition fails to state extrinsic facts and plead special damages, we hold that the trial court did not err in sustaining defendants' motions to dismiss Count IV of his petition for failure to state a claim.

## COUNT II

Count II of Buller's petition is claimed to be a Count for intentional interference with business expectancies, a tort recognized under Missouri law. *Downey et al. v. United Weather Proofing, Inc.,* 253 S.W.2d 976 (Mo.1953). To establish a claim for intentional interference with business expectations a plaintiff must establish the following five elements:

1) a contract or valid business relationship or *expectancy;*

2) knowledge by the defendant of the contract or relationship;

3) intentional interference by the defendant which induces the breach of contract or relationship;

4) the absence of justification; and

5) resulting damages.

In *Scheibel v. Hillis,* 531 S.W.2d 285, 290 (Mo. banc 1976) the court said that a petition which invokes substantive principles of law entitling plaintiff to relief and

contains allegations of facts which inform a defendant of what plaintiff will attempt to establish at trial is sufficient against a motion to dismiss. The court also stated at p. 290;

> "plaintiff could be compelled by motion ... to plead more specifically or by interrogatories to give more information ... but this does not mean the petition does not state a cause of action in its present form. A pleader is required to state only the ultimate facts and it is not necessary to plead the facts or circumstances by which the ultimate facts will be established."

In light of these standards we now evaluate the sufficiency of Buller's claim of tortious interference with business expectations.

Buller, in Count I of her petition alleges the existence of a business in psychic readings and incorporated this allegation in Count II of her petition by reference. She then alleges that her business is exclusively referral and that she relies heavily on her reputation and good name. These allegations supply the element of a business expectancy as required by case law. Buller has a business uniquely designed to raise an expectation of future business. The word of mouth recommendations of clients lead her to expect future business and she claims an interference with such expectancy.

Buller also alleges that defendants had knowledge of the contract or expectancy, and in Count II clearly alleges that defendants were at all times aware of the referral nature of her business. A continuous awareness is knowledge of a situation. She continues by alleging the elements of intentional interference with business expectancies, a lack of justification and resulting damage, as required in order to state a claim of tortious interference with business expectancies.

Defendants, however, claim that this tort is a specific intent tort, and that under the Restatement (2nd) of Torts, § 8A and § 766B, Comment d (1977), it must be alleged that the interference was a primary motivation for the conduct or that the interference was known by the actor to be substantially certain to occur. We are not convinced that Missouri courts have imposed this gloss on "intentional interference." Buller does, nevertheless, allege a specific intent by defendant to interfere with her business expectancies. As we are required to accept the facts alleged in her petition as true, we have noticed the unique nature of Buller's business, where referrals which induce future business depend on her good name and reputation. To interfere with her good name and reputation would surely affect the prospects of future business. In Count II, Buller incorporated by reference allegations in Count I, that defendants published the article specifically for the purpose of discrediting her in her profession. She then further alleges an intentional interference with her business expectancies. It is clear that her reputation and good name are the essence of her business as she claims.

We hold that Buller has successfully alleged defendants' specific intent to interfere with her business expectancies in Count II of her petition.

Defendants also claim that Buller had failed to plead an absence of justification, this simply is not so. In paragraph 17 of Count II of Buller's petition she alleged "Defendants had no justification for such publication," and in light of *Scheibel*, supra, this allegation sufficiently establishes this element of the tort, and this claim of defendants is without merit.

In view of the foregoing we hold that the trial court erred in sustaining defendants' motion to dismiss Count II of Buller's petition for failure to state a claim.

## COUNTS III and V

Counts III and V of plaintiffs' petition are, according to plaintiffs, claims for invasion of privacy. Missouri has, since *Munden v. Harris*, 153 Mo.App. 652, 134 S.W. 1076, 1079[2] (Mo.App.1911) recognized a common law cause of action for an invasion of privacy. "Invasion of privacy" is the general term used to describe four

distinct torts, each of which has distinct elements which must be proved. Restatement of Torts (2nd) A.L.I., § 652A (1977) declares that the right to privacy is invaded when there is: (1) an unreasonable intrusion upon the seclusion of another; or (2) the appropriation of the other's name or likeness; or (3) unreasonable publicity given to the other's private life; or (4) publicity that unreasonably places the other in a false light before the public.

We recognized in *Corcoran v. Southwestern Bell Telephone Company*, 572 S.W.2d 212, 214 (Mo.App.1978) that the Restatement had not been expressly adopted in Missouri but that the distinctions were useful, if not critical, in deciding that case on appeal. In reaching its decision the Corcoran court proceeded to rely upon these distinctions.

The Missouri Supreme Court in *Sofka v. Thal*, 662 S.W.2d 502 (Mo. banc 1983) also relied upon these distinctions and quoted *Corcoran*, supra, at p. 510 as setting out the Restatement distinction. The Sofka court then proceeded to apply one of the specific types of the tort of invasion of privacy, intrusion, or seclusion, and noted that this was one of the identifiable forms of the tort of invasion of privacy.

From the foregoing cases we conclude that the Restatement distinctions have been adopted by use if not by express language, and that there are therefore four separate torts for the invasion of privacy in the state of Missouri, of which publicly placing one in a false light is one.

■ In *Barber v. Time, Inc.*, 159 S.W.2d 291, 295[9, 10] (Mo.1942) our Supreme Court set out the rule to be followed in evaluating invasion of privacy claims involving public disclosure of private facts. If a court decides that the matter is outside the scope of proper public interest *and* that there is substantial evidence tending to show a serious, unreasonable, unwarranted and offensive interference with another's private affairs, then the case is one for the

jury. *Barber*, supra, at p. 295. The threshold decision is whether the matter in question is outside the scope of a proper or legitimate public interest, and this decision must inevitably rest upon the facts of each case.

Missouri courts have had numerous occasions to determine what matters are within the public interest.

In *McNally v. Pulitzer Publishing Company, et al.*, 532 F.2d 69 (8th Cir.1976) the federal court in applying Missouri law considered an invasion of privacy claim and held that defendants' acts of publishing parts of plaintiff's psychiatric reports was not an invasion of privacy when other parts of the report were read in open court and were therefore matters of public record. The court noted that the person's mental competency was information in which the public had a legitimate concern. *McNally*, supra, at p. 78.

In *Langworthy v. Pulitzer Publishing Company*, supra, the court held that a newspaper article regarding a theft reported by the plaintiff was not an invasion of privacy because the theft was a matter of public interest.

In *Williams v. KCMO Broadcasting Division-Meredith Corporation*, 472 S.W.2d 1 (Mo.App.1971) the court held that where the plaintiff was arrested by mistake and the arrest was televised, the plaintiff was involved in a noteworthy event about which the public had a right to be informed. The *Williams* court, at p. 5, distinguished this type of situation from one in which a woman's dress was blown up over her waist in public and she had been photographed, and another in which a man's injuries sustained on the job had been photographed by his employer and shown at safety meetings. Neither of these were held to be items of legitimate public interest and therefore created a cause of action for the invasion of right of privacy.[2] In *Barber*, supra, the fact that plaintiff had entered a hospital

2. *Daily Times Democrat v. Graham*, 162 So.2d 474 (Ala.1964) and *Lambert v. Dow Chemical*

*Company*, 215 So.2d 673 (La.App.1968).

for treatment of an eating disorder was held to be a private interest.

██ From the foregoing cases we believe it is clear that where the operation of laws and the activities of the police or other public bodies are involved, the matter is within the public interest. Where, however, events occur which affect the individual alone, and do not touch the sphere of public concern, they are not within the public interest.

██ Even though a matter is not within the public interest, the fact that it is wrongly publicized does not automatically point to an invasion of privacy. There must be substantial evidence tending to show a serious, unreasonable, unwarranted and offensive interference with the individual's private affairs. Missouri courts frequently interpret this requirement as meaning that the plaintiff cannot recover unless the publication is such that the defendant should realize that a person of reasonable sensibilities would be humiliated. *Williams*, supra, at p. 31.

██ In summary, the generally recognized elements of the tort of disclosure of private facts are: (1) the publication; (2) absent any waiver of privilege; (3) of private matters in which the public has no legitimate concern; and (4) such as to bring humiliation or shame to a person of ordinary sensibilities. *Langworthy*, supra, at pp. 389–390. *Williams*, supra, at pp. 3–4.

██ Buller's petition alleges the first two elements of the tort sufficiently. It alleges the publication of the news article in question and that she had refused to grant interviews prior to its publication. Under the standard of review to be applied we may accord the petition the reasonable inferences fairly deducible from the facts stated, and her refusal to grant an interview indicates an absence of any waiver or privilege. Further, the fact alleged that defendant reporter used a false name and "concealed the fact that she was a reporter on an assignment" further supports the absence of any waiver or privilege.

The next question to be considered is whether Buller's psychic ability and her consultations with clients are private matters in which the public has no legitimate concern.

This matter clearly falls in the middle of the distinction drawn by earlier courts between acts of law enforcement bodies or other noteworthy events on the one side and health related or personal physical events on the other.

Were Buller involved in a noteworthy event, through her practice, such as the prediction of a world disaster, or reported or was arrested for a crime, we would feel comfortable with a decision that this matter was within the public domain. Rather her practice involves the highly personal business of attempting to predict future events in the lives of individual clients. This is far removed from the traumas and disasters which catapult private people into the public eye, or of crimes and law enforcement with which the public is validly concerned. Buller's practice is clearly dissimilar to any of the matters which courts have determined to be within the public interest. Therefore, we hold that she successfully alleges that a private matter has been wrongfully publicized.

The remaining element to be alleged is the extent of humiliation or shame resulting from the alleged publication. The plaintiff must allege facts sufficient to show that a person of reasonable sensibilities would be humiliated by the disclosure, *Williams*, supra.

Buller alleges that she was depicted in the news article and drawing "as a psychic who gave readings while seated in a bed wearing a ridiculous costume with charts in her lap who conducted her business as if it were an assembly line and whose sole purpose was the acquisition of money with little or no concern for her clients." It is reasonable to conclude that any member of a chosen profession with reasonable sensibilities would be humiliated and ashamed to be depicted as doing his or her job in such an unprofessional and incompetent manner.

For these reasons we hold that Buller stated a claim for public disclosure of private facts and that the trial court erred in sustaining defendants' motion to dismiss Count III of Buller's petition for failure to state a claim.

 Roldan, too, in Count V of the petition, attempts to state a claim for public disclosure of private facts. He alleges a publication but in our view does not sufficiently allege absence of waiver or privilege. Although he alleges that prior to publication he lived a secluded life, this alone does not indicate to us a refusal to have anything to do with the press. In comparison, Buller alleged that not only did she refuse to grant interviews but that the defendant reporter employed a false name in order to gain her confidence. Roldan failed to allege anything other than he led a secluded private life. We may not from this allegation infer an absence of waiver or privilege.

Furthermore, Roldan fails to allege the element of humiliation or shame, the fourth element of public disclosure of private facts. Nor does he allege facts showing that a person of reasonable sensibilities would be shamed or humiliated.

We hold therefore that Roldan failed to state a claim for public disclosure of private facts.

We move now to a consideration of whether Roldan pleaded a claim for publicity placing him in a false light.

According to the Restatement (Second) of Torts, § 652E (1977):

"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
a) the false light in which the other was placed would be highly offensive to a reasonable person, and
b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter, and the false light in which the other would be placed."

Roldan does not plead the first element of the tort. Defendants' description of Roldan as a "voodoo practitioner" and a practicer of "voodoo magic" would not necessarily be highly offensive to a reasonable person. An ordinary person might not even understand the implication of such terms and might even believe they connote some special power or ability and not as putting one before the public in a false light.

We hold Roldan did not state a claim for placing him in a false public light.

We hold therefore that the trial court erred in sustaining defendants' motions to dismiss Counts I, II and III of plaintiff Buller's petition for failure to state a claim for which relief can be granted, and we remand those counts to the trial court for further proceedings not inconsistent with this opinion.

With respect to Counts IV and V of the petition we affirm the trial court.

Affirmed in part and reversed and remanded in part.

SNYDER and STEWART, JJ., concur.