382 F.2d 84
 8 A.L.R.Fed. 729
 ALLSTATE INSURANCE COMPANY, and Josiah S. Murray, III,
Administrator of the Estates of Leroy Canaty, Sr.
and Leroy Canaty, Jr., Appellees,
v.
Raymond McNEILL and Queen City Coach Company, Appellants.
 No. 10912.
 United States Court of Appeals Fourth Circuit.
 Argued March 8, 1967.
Decided July 21, 1967.
 
 Charles T. Myers, Charlotte, N.C., (Myers & Totherow, Charlotte, N.C., on brief), for appellants.
 Jerry S. Alvis, Raleigh, N.C. (Dupree, Weaver, Horton, Cockman & Alvis, Raleigh, N.C., on brief), for appellee Allstate Ins. Co.
 Josiah S. Murray, III, Durham, N.C., and David A. White, Rock Hill, S.C. (Newsom, graham, Strayhorn & Hedrick, Durham, N.C., and Roddey, Sumwalt & Carpenter, Rock Hill, S.C., on brief), for appellee Administrator.
 Before HAYNSWORTH, Chief Judge, BRYAN, Circuit Judge, and SIMONS, District Judge.
 ALBERT V. BRYAN, Circuit Judge:
 
 
 1
 This statutory interpleader action was instituted by Allstate Insurance Company, appellee, under 28 U.S.C. 1335, to obtain an equitable and conclusive distribution of moneys payable under an automobile liability policy it had issued on July 20, 1962 to Sam McCullough. With requisite diversity of citizenship among the interpleaded defendants, Allstate deposited the fund in the registry of the District Court and prayed discharge of further liability.
 
 
 2
 The insured and two passengers-- Leroy Canaty, Sr. and Leroy Canaty, Jr.-- with him in his car, were killed when it collided on November 2, 1963 upon a North Carolina highway with a bus owned by the defendant-appellant Queen City Coach Company, and operated for it by the defendant-appellant Raymond McNeill. Bodily injuries were suffered by the bus driver and his passengers and the bus was damaged. The policy protection was limited to $20,000 for death and personal injuries, and $5,000 for property damage.
 
 
 3
 Confessing its potential liability on claims for these deaths, injuries and damage, Allstate named as defendants not only Queen, its driver and the administrator of the Canaty estates, but also each of the bus passengers. McCullough's estate was not impleaded. All of the defendants asserted claims against the impounded moneys. Additionally, the Canatys' administrator cross-claimed against Queen and McNeill for the deaths of his intestates.
 
 
 4
 The District Court granted Allstate's motion for an injunction restraining the defendants from prosecuting elsewhere any claim against Allstate on account of the policy, and released the company of further responsibility under its contract. At the same time, the Court denied Queen's and McNeill's motions for dismissal of the interpleader bill and the Canaty claims. Incidentally, Allstate does not disavow its policy obligation to defend at its expense any action brought against the McCullough estate upon any liability asserted as arising from his operation of the accident car.
 
 
 5
 Queen and McNeill appeal on the following grounds:
 
 
 6
 (1) That the interpleader action could not proceed without the estate of McCullough as a party;
 
 
 7
 (2) That it cannot be maintained until the claims of the defendants against McCullough have been reduced to judgments; and
 
 
 8
 (3) That the appellants Queen and McNeill are not subject to suit in the interpleader action by the Canaty estates.
 
 
 9
 None of these contentions can prevail except (3). Irrespective of whether the McCullough estate is insolvent, as Allstate avers and appellants deny, his personal representative is not a necessary party here. The estate had no claim whatsoever against the deposit, and hence it was not one of the 'adverse claimants' contemplated by the statute, 28 U.S.C. 1335. Furthermore, Queen and McNeill made no effort to bring the estate into the suit, F.R.Civ.P. 13(h), thus refuting their present assertion of the necessity of the estate's joinder.
 
 
 10
 The second ground is refuted by State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (April 10, 1967) which was decided after the entry of the decree now on review. It upholds the standing of an insurer to resort to interpleader without awaiting liquidation of the claims against its insured.
 
 
 11
 This decision, however, compels a reversal of the decree here insofar as it overruled the motions of Queen and McNeill, its driver, to dismiss the Canaty claims against them. Interpleader, Tashire held, was not the equivalent of a bill of peace. It may not be used as the arena for resolution of claims of the defendants inter se, except insofar as they have adversity in their demands upon the fund. We quote the Court:
 
 
 12
 'We recognize, of course, that our view of interpleader means that it cannot be used to solve all the vexing problems of multiparty litigation arising out of a mass tort. But interpleader was never intended to perform such a function, to be an all-purpose 'bill of peace.' * * * None of the legislative and academic sponsors of a modern federal interpleader device viewed their accomplishment as a 'bill of peace,' capable of sweeping dozens of lawsuits out of the various state and federal courts in which they were brought and into a single interpleader proceeding. * * *'
 
 
 13
 Of course, cross-claims may be asserted by the Canaty estates under F.R.Civ.P. 13(g) against Queen and McNeill, to attack their claims against the common fund, but for no other purpose.
 
 
 14
 As to the property-damage portion of the fund, it is arguable that the interpleader should not be allowed because there is but one claimant to this money, i.e. Queen. That company, before it was impleaded in this litigation, sued the McCullough estate for property damage in a State court-- since removed to the United States District Court for the Western District of North Carolina and stopped temporarily-- and the estate had counterclaimed there for damages for its decedent's death. Without reservation Allstate has surrendered even the property-damage money and has been acquitted of further responsibility. It is doubtful that the statute intends a severance of the moneys due under a single policy or other sole instrument. But, more importantly, some other claim for property loss might develop in the division of the fund. At all events the contention will not be allowed to disturb the decree on appeal.
 
 
 15
 Dismissal of the appeal of Queen and McNeill is moved by the Canaty estates. They desire to secure the advantage of the decree insofar as it gives them a trial of their claims against Queen and McNeill in the interpleader suit. While it is not the marrow of their motion, we explain in passing that the order was rendered on the plaintiff's motion and not on evidence. There was no dispute on the facts and consequently nothing to prove.
 
 
 16
 The real point made by the Canaty estates is that the order was interlocutory and no permission obtained for the appeal under 28 U.S.C. 1292(b). A further point is that if the order is final, no appeal can be taken without a certificate under 54(b) F.R.Civ.P.
 
 
 17
 The appeal will lie, we think, under 28 U.S.C. 1292(a)(1) as an interlocutory decree granting an injunction. This statute is self-executing without need of permission under 1292(b). Wright, Federal Courts 403 (1963 ed.). While appellants Queen and McNeill do not specifically and directly attack the injunction, their appeal is nevertheless proper under 1292(a)(1). 6 Moore's Federal Practice 253, fn. 6. The reason is that they make a more fundamental assault. They question the jurisdiction of the Court to entertain the interpleader at all. For grounds, to repeat, they note the absence from the suit of the insured as a party and the unliquidated state of the claims interpleaded. Thus issues basic to the injunction are made on their appeal. In these circumstances an appeal may be prosecuted under 1292(a)(1). 6 Moore's Federal Practice 54.
 
 
 18
 On such an appellate review the court may and should resolve all other questions adjudicated by the decree. These would include the right of the Canaty estates to sue Queen and McNeill within the interpleader suit. In this particular, dealing with the predecessor of 1292(a)(1), the Court in Smith v. Vulcan Iron Works, 165 U.S. 518, 525-526, 17 S.Ct. 407, 410, 41 L.Ed.2d 810 (1897) said:
 
 
 19
 'according to its grammatical construction and natural meaning, (that section authorizes) an appeal to be taken from the whole of such interlocutory order or decree, and not from that part of it only which grants or continues an injunction.
 
 
 20
 'The manifest intent of this provision, read in the light of the previous practice in the courts of the United States, contrasted with the practice in courts of equity of the highest authority elsewhere, appears to this court to have been, not only to permit the defendant to obtain immediate relief from an injunction, the continuance of which throughout the progress of the cause might seriously affect his interests, but also to save both parties from the expense of further litigation, should the appellate court be of opinion that the plaintiff was not entitled to an injunction because his bill had no equity to support it.'
 
 
 21
 In the same tenor is Deckert v. Independence Shares Corp., 311 U.S. 282, 287, 61 S.Ct. 229, 232, 85 L.Ed. 189 (1940), where speaking of such an appeal, the Court observed:
 
 
 22
 'However, this power is not limited to mere consideration of, and action upon, the order appealed from. 'If insuperable objection to maintaining the bill clearly appears, it may be dismissed and the litigation terminated.' Accordingly, the Circuit Court of Appeals properly examined the interlocutory order denying the motions to dismiss, although generally it could consider such an order only on appeal from a final decision.'
 
 
 23
 An authoritative summary is found in Wright, Federal Courts 400 (1963 ed.), where the author says:
 
 
 24
 'It is settled that an appeal from an order granting or refusing an injunction brings before the appellate court the entire order, not merely the propriety of injunctive relief, and that the appellate court may consider and decide the merits of the case, and may order dismissal of the action. * * *'
 
 
 25
 Accord, Chappell & Co. v. Frankel, 367 F.2d 197, 204 (2d Cir. 1966).
 
 
 26
 The order on appeal will be affirmed except insofar as it denied the motions of Queen and McNeill to dismiss the Canaty estates' claims against them. In the latter respect, it is reversed and the action remanded with directions to the District Court to dismiss the cross-complaints of the Canaty estates.
 
 
 27
 Affirmed in part, reversed in part, and remanded.
 
 HAYNSWORTH, Chief Judge (dissenting in part):
 
 28
 I think my brothers misapply Tashire,[1] and to that extent I must respectfully dissent.
 
 
 29
 The event which gave rise to the litigation in Tashire was remarkably like that which underlies this litigation. In Tashire, a Greyhound bus was in a collision with a pickup truck. Two of the passengers aboard the bus were killed and thirty-three other passengers were injured. The driver of the bus and the occupants of the pickup truck were also injured. The pickup truck was insured under a liability policy with a limit, just as the insurance on the automobile in this case, of $20,000 for multiple claims for death and personal injury. After four of the injured bus passengers had filed suits in state courts in California, the insurer of the pickup truck brought an interpleader action in the District of Oregon, joining as defendants Greyhound and all of the actual and potential claimants. Greyhound then sought protection of the interpleader statute and obtained an injunction in the interpleader action in Oregon, requiring the prosecution of all claims against it arising out of the accident to be had in the interpleader action in Oregon. The injunction permitted the protective filing of suits against Greyhound elsewhere, but prohibited their prosecution.
 
 
 30
 The Supreme Court held, of course, that Greyhound was not entitled to the benefits of the interpleader statute. It had no limited fund to pay into the court to satisfy the multiple claims. It was simply the case of a solvent defendant seeking to control the venue and to deny the tort plaintiffs their normal choice of forum, notwithstanding the fact that a number of the tort plaintiffs may not have been in the least interested in claiming against the small proceeds of the insurance policy on the truck.
 
 
 31
 The present case comes up in a very different posture. Queen City, the bus company, and its driver are not seeking the protection of the interpleader statute. They are present as properly impleaded defendants, but they are affirmatively asserting claims against the insurance fund representing the proceeds of the insurance policy on the automobile. While thus affirmatively asserting their own rights, they are contending for an immunity from cross claims arising out of the same occurrence. While Tashire teaches that Queen City would not have the right to compel its adverse tort plaintiffs to proceed against it in the interpleader action, it contains no suggestion that the tort plaintiffs may not prosecute their claims against Greyhound as cross claims in the interpleader action while pressing their claims to the insurance fund, if that is their wish.
 
 
 32
 In pursuing the claims against the insurance fund, in view of its limited amount, the practicalities of the situation compel the Canatys to make every effort to exclude Queen City and its bus driver from participation in that fund. To obtain such an exclusion, it will be necessary in the interpleader action to fully try and determine the issues of negligence of the bus driver and Queen City and the question of causation of the collision. Those are exactly the same issues raised by the cross claims. If, therefore, the cross claims cannot be pressed in the interpleader action, the cross claimants on the one hand and Queen City and its bus driver on the other will be required to have a full adversary trial of the same issues in two separate forums. This seems to me quite unnecessary and hardly consistent with the effective administration of justice.
 
 
 33
 Rule 13(g) of the Federal Rules of Civil Procedure provides for the filing of a cross claim by a party against a coparty when, as here, the claim arises out of the same occurrence that is the subject matter of the original action. The rule should be liberally applied to avoid repetitious relitigation by the identical parties of the same factual issues. Indeed, cross claims have been allowed in interpleader actions, notwithstanding the absence of any independent basis of jurisdiction of the cross claim.[2]
 
 
 34
 I think it was well within the discretion of the District Judge to allow the cross claims.
 
 
 
 [1]
 State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967)
 
 
 [2]
 See Kerrigan's Estate v. Joseph E. Seagram & Sons, Inc., 3 Cir., 199 F.2d 694; Elliott v. Federal Home Loan Bank Bd., S.D.Cal., 233 F.Supp. 578 (1964)