Martin McNALLY, Appellant,

v.

The PULITZER PUBLISHING COMPA-
NY and Ted Gest, Appellees.

No. 75–1295.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 15, 1975.

Decided March 5, 1976.

Rehearing and Rehearing En Banc
Denied March 30, 1976.

Martin McNally, pro se, and Roger Lee Woods, Inmate Legal Researcher, filing briefs, for appellant.

Robert D. Evans, Robert B. Hoemeke and Michael P. Casey, St. Louis, Mo., filing briefs, for appellees.

Before LAY, STEPHENSON and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Martin McNally, an inmate of the Leavenworth Federal Penitentiary, Leavenworth, Kansas, appeals from the dismissal of Pulitzer Publishing Company and its reporter Ted Gest from his pro se action to redress the alleged deprivation of his civil rights.

McNally was convicted in December, 1972, on two counts of aircraft piracy in violation of 49 U.S.C. § 1472(i), and was sentenced to two concurrent terms of life imprisonment. A direct appeal from the conviction was affirmed by this Court. *United States v. McNally,* 485 F.2d 398 (8th Cir. 1973), *cert. denied,* 415 U.S. 978, 94 S.Ct. 1566, 39 L.Ed.2d 874 (1974).

Prior to the aircraft piracy trial, McNally had been incarcerated at the Federal Medical Center at Springfield, Missouri, for a psychiatric examination to determine his competency at that time and at the time of the alleged offense. On November 6, 1972, during the course of a pretrial hearing on motions, the District Court read in open court certain portions of the Medical Center report on McNally's mental capacity. *See* 18 U.S.C. § 4244. Following this hearing, Gest, a reporter for Pulitzer's Saint Louis Post-Dispatch, obtained a copy of the full medical report from Robert Schneider, who was the Assistant United States Attorney prosecuting the case. On November 15, 1972, the Post-Dispatch published an article quoting several portions of the report which had not been read at the hearing. In summarizing the psychiatric report from the Federal Medical Center staff, the article stated that McNally "suffered from a severe personality disorder" and that he was "of an anti-social type" and may have had "an underlying paranoid process which is not readily apparent at this time". McNally was quoted as having told the staff that he was "a nice decent guy, easy going and easy to get along with" and "a follower, rather than a leader". The article stated that the Medical Center staff had "decided unanimously that McNally was capable of aiding in his own defense". The conclusion of the staff regarding McNally's mental responsibility at the time of the aircraft hijacking, which was mentioned by the District Court during the hearing, was not reported in the article. The statements quoted in the article on the "anti-social type", "the underlying paranoid process", and "a nice decent guy" had not been mentioned by the District Court.[1]

On May 22, 1974, McNally filed a pro se complaint in the United States District Court for the Western District of Missouri seeking relief for the alleged deprivation of his civil rights. McNally first asserted that various abuses had occurred during his pretrial period of incarceration at the Federal Medical Center, and named as defendants the Director of the United States Bureau of Prisons and various officials, doctors, and guards of the Medical Center. A second series of allegations related to the pretrial publication by the Post-Dispatch of the psychiatric report on McNally which had been furnished to reporter Gest by government attorney Schneider. The relief prayed for included compensatory and punitive damages and declaratory relief, as well as a permanent injunction restraining the Post-Dispatch and Gest from "such conduct or similar conduct against the plaintiff".

In an order entered June 5, 1974, the District Court dismissed as moot the challenge to the conditions of confinement during McNally's pretrial incarceration at the Federal Medical Center, which was in the nature of a writ of habeas corpus, since the complaint was filed subsequent to his release from that facility.[2] Pulitzer then moved to dismiss the remainder of the action, asserting several grounds including that of improper venue. McNally filed a response resisting this motion, and included

---

1. In affirming McNally's conviction on direct appeal, this Court criticized the circumstances under which the unmentioned details of the report found their way into public print. *United States v. McNally,* 485 F.2d 398, 403–04 (8th Cir. 1973), *cert. denied,* 415 U.S. 978, 94 S.Ct. 1566, 39 L.Ed.2d 874 (1974).

2. McNally does not appeal from this ruling by the District Court.

an allegation that, in addition to stating a cognizable claim for the deprivation of his civil rights, the facts in the complaint stated a claim in tort over which the District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332.[3] The District Court denied Pulitzer's motion to dismiss, but ordered a change of venue to the Eastern District of Missouri pursuant to 28 U.S.C. § 1406(a).

Upon transfer of the case to the Eastern District, Pulitzer renewed its motion to dismiss in that court. McNally filed a motion to transfer that part of the action not involving Pulitzer and Gest back to the Western District of Missouri. On April 7, 1975, the District Court[4] dismissed the action as to Pulitzer and Gest on the ground that McNally had failed to allege any racial or other class-based discrimination and thus had not stated a cause of action under the applicable civil rights statute reaching private conduct, 42 U.S.C. § 1985(3). This order made no reference to McNally's assertion of diversity jurisdiction or any other possible claim for relief. Since the remaining defendant, Schneider, was a resident of the Western District, McNally's motion for a retransfer of the action to that district was granted, and there is no indication that this litigation has reached a conclusion in that district. McNally takes this appeal from the order of the Eastern District Court dismissing defendants Pulitzer and Gest. We affirm for the reasons stated below.

## I

The order dismissing defendants Pulitzer and Gest did not resolve the rights and liabilities of all parties; indeed, the action apparently continues as to defendant Schneider upon its return to the Western District of Missouri. The order was thus not a final decision within 28 U.S.C. § 1291. Since the District Court below did not proceed under Fed.R.Civ.P. 54(b) to render (1) "an express determination that there is no just reason for delay" and (2) "an express direction for the entry of judgment", this Court is without jurisdiction unless the order is of a type permitted interlocutory review by statute. *See Lane v. Graves,* 518 F.2d 965 (8th Cir. 1975); *Wooten v. First National Bank,* 490 F.2d 1275, 1276 (8th Cir. 1974).

28 U.S.C. § 1292(a)(1) expressly extends appellate jurisdiction to "[i]nterlocutory orders of the district courts * * * granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions * * *." McNally's complaint sought injunctive relief solely against defendants Pulitzer and Gest, seeking a permanent injunction to restrain "such conduct or similar conduct against the plaintiff". Thus, since the District Court dismissed from the action the only defendants against whom injunctive relief was sought, the order is effectively a denial of the injunctive relief sought by McNally, and is therefore appealable pursuant to 28 U.S.C. § 1292(a)(1). *See Build of Buffalo, Inc. v. Sedita,* 441 F.2d 284, 286–87 (2d Cir. 1971); *Spangler v. United States,* 415 F.2d 1242, 1246–47 (9th Cir. 1969). *Cf. Hartmann v. Scott,* 488 F.2d 1215, 1219–20 (8th Cir. 1973); *Yaffe v. Powers,* 454 F.2d 1362, 1364–65 (1st Cir. 1972); *Langevin v. Chenango Court, Inc.,* 447 F.2d 296, 299 (2d Cir. 1971); *Brunson v. Board of Trustees,* 311 F.2d 107, 108 (4th Cir. 1962), *cert. denied,* 373 U.S. 933, 83 S.Ct. 1538, 10 L.Ed.2d 690 (1963).

## II

An appeal from an order granting or refusing injunctive relief pursuant to 28

---

**3.** The diversity claim is most clearly raised in McNally's response to the motion to dismiss, in which he alleges that he is a citizen of Michigan; that defendants Pulitzer Publishing Company and Gest are citizens of Missouri; and that the amount in controversy exceeds $10,-000. *See* 28 U.S.C. § 1332. While the diversity claim is obscure, and the District Court cannot be faulted for not detecting it, we accept it under principles of liberal construction of pro se petitions, especially since appellees have accepted and briefed the issue.

**4.** The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri.

U.S.C. § 1292(a)(1) presents for appellate review "the entire order, not merely the propriety of injunctive relief, and * * * the appellate court may consider and decide the merits of the case and may order dismissal of the action." C. Wright, Handbook of the Law of Federal Courts § 102, at 459 (2d ed. 1970). *See Deckert v. Independence Shares Corp.,* 311 U.S. 282, 286–87, 61 S.Ct. 229, 232, 85 L.Ed. 189, 193 (1940); *Smith v. Vulcan Iron Works,* 165 U.S. 518, 525–26, 17 S.Ct. 407, 410, 41 L.Ed. 810, 812 (1897); *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1067 (2d Cir. 1972); *Allstate Insurance Co. v. McNeill,* 382 F.2d 84, 87–88 (4th Cir. 1967), *cert. denied,* 392 U.S. 931, 88 S.Ct. 2290, 20 L.Ed.2d 1390 (1968).

### A.

▮ McNally contends that Pulitzer and Gest engaged in a private conspiracy to deprive him of equal protection of the law or of equal privileges and immunities and that their private conduct may therefore be challenged pursuant to 42 U.S.C. § 1985(3).[5] In *Griffin v. Breckenridge,* 403 U.S. 88, 101–02, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338, 347 (1971), the Supreme Court held that 42 U.S.C. § 1985(3) provided such a cause of action against private conspiracies. While it must be determined in each Section 1985(3) action whether a constitutional source of congressional power to reach the private conspiracy alleged in the complaint exists, *id.* 403 U.S. at 104, 91 S.Ct. at 1799, 29 L.Ed.2d at 349; *Means v. Wilson,* 522 F.2d 833, 838 (8th Cir. 1975); *Action v.*

*Gannon,* 450 F.2d 1227, 1233 (8th Cir. 1971), we need not and do not reach this question.

In the instant case, there is no allegation of any element of class-based discriminatory motivation on the part of the alleged private conspiracy. Yet the decision in *Griffin v. Breckenridge, supra,* 403 U.S. at 102, 91 S.Ct. at 1798, 29 L.Ed.2d at 348, is clear that:

The language [of § 1985(3)] requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all. [emphasis original; footnotes omitted]

Although it has not yet fully defined the types of class-based discrimination cognizable under Section 1985(3), the Supreme Court [6] has emphatically rejected the notion that the statute encompasses tortious acts which have no element of class discrimination:

That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others. For, though the supporters of the legislation insisted on coverage of private conspiracies, they were equally emphatic that they did not believe, in the words of Representative

---

**5.** 42 U.S.C. § 1985(3) provides in part:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; * * * [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or

privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

**6.** In the absence of clear guidance the lower federal courts continue to grapple with what constitutes class-based animus encompassed by Section 1985(3). *See, e. g., Means v. Wilson,* 522 F.2d 833 (8th Cir. 1975); *Bellamy v. Mason's Stores, Inc.,* 508 F.2d 504 (4th Cir. 1974); *Cameron v. Brock,* 473 F.2d 608 (6th Cir. 1973); *Bricker v. Crane,* 468 F.2d 1228 (1st Cir. 1972), *cert. denied,* 410 U.S. 930, 93 S.Ct. 1368, 35 L.Ed.2d 592 (1973); *Action v. Gannon,* 450 F.2d 1227 (8th Cir. 1971).

Cook, "that Congress has a right to punish an assault and battery when committed by two or more persons within a State." \* \* \* The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. [citation omitted] *Griffin v. Breckenridge, supra,* 403 U.S. at 101–02, 91 S.Ct. at 1798, 29 L.Ed.2d at 347. *See also Means v. Wilson, supra,* 522 F.2d at 840 n. 5; *Thomas v. Economic Action Committee,* 504 F.2d 563, 564–65 (5th Cir. 1974); *Bricker v. Crane,* 468 F.2d 1228, 1232–33 (1st Cir. 1972), *cert. denied,* 410 U.S. 930, 93 S.Ct. 1368, 35 L.Ed.2d 592 (1973).

McNally does not contend that appellee's conduct was "directed at a significant number of persons on the basis of their shared, rather than individual, characteristics." *McLellan v. Mississippi Power & Light Co.,* 526 F.2d 870, 878 (5th Cir. 1976). The lack of any allegation asserting any element of class-based discriminatory animus removes McNally's allegations of a private conspiracy from the ambit of Section 1985(3), and the District Court thus properly found that no claim for relief against Pulitzer and Gest was stated under that provision.

**B.**

While the District Court only considered and rejected McNally's claim under 42 U.S.C. § 1985(3), it is clear from a fair reading of the complaint that McNally asserted a second basis of liability under applicable civil rights doctrine: the "implied remedy" for unconstitutional federal action under the rationale of *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). While the alleged wrongful conduct in this case

involves the private defendants Pulitzer and Gest, there are allegations that these defendants acted in concert with a federal official acting under color of federal law.

In *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 150–52, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142, 150 (1970), the Supreme Court held that private parties, jointly engaged with *state* officials in unlawful conduct, are acting under "color of law" for purposes of 42 U.S.C. § 1983. In so holding, the Court indicated that such joint conduct exists when the private and public parties act with a common understanding or "meeting of the minds". *Id.* at 152, 158, 90 S.Ct. at 1605, 26 L.Ed.2d at 151. *See United States v. Price,* 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267, 272 (1966); *Smith v. Brookshire Brothers,* 519 F.2d 93, 94–95 (5th Cir. 1975); *Barnes v. Dorsey,* 480 F.2d 1057, 1061 (8th Cir. 1973); *Fulton v. Emerson Electric Co.,* 420 F.2d 527, 530 (5th Cir. 1969), *cert. denied,* 398 U.S. 903, 90 S.Ct. 1689, 26 L.Ed.2d 61 (1970).

In the instant case, the alleged unlawful official conduct is that of a *federal* official and private parties and is thus not subject to 42 U.S.C. § 1983.[7] Nevertheless, the Supreme Court has clearly indicated that a remedy exists for the deprivation under federal law of constitutional rights. If the Constitution creates a right, privilege, or immunity, it of necessity grants the proper party a claim for equitable relief if it can prevail on the merits. *See Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939, 944 (1946); *Wounded Knee Legal Defense/Offense Committee v. Federal Bureau of Investigation,* 507 F.2d 1281, 1284 (8th Cir. 1974). Yet the Constitution, unlike 42 U.S.C. § 1983, does not automatically create an action for recovery of *damages* for all deprivations of constitutional rights. The Supreme Court has held, however, that a private damage action will lie for violation of the Fourth Amendment by federal

---

7. 42 U.S.C. § 1983 is inapplicable to persons acting under color of federal law. *See Wheeldin v. Wheeler,* 373 U.S. 647, 652, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605, 611 (1963); *Bivens v. Six Unknown Named Agents,* 403 U.S. 388,

398 n. 1, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619, 627 (1971) (Harlan, J., concurring); *Williams v. Rogers,* 449 F.2d 513, 517 (8th Cir. 1971), *cert. denied,* 405 U.S. 926, 92 S.Ct. 976, 30 L.Ed.2d 799 (1972).

officials, *Bivens v. Six Unknown Named Agents, supra,* 403 U.S. at 395–97, 91 S.Ct. at 2004, 29 L.Ed.2d at 626, and this Court has indicated that a federal question was raised in a damage action for violation of the Sixth Amendment. *Wounded Knee Legal Defense/Offense Committee, supra,* 507 F.2d at 1284.[8]

Assuming, without deciding, that a cause of action for damages as well as injunctive relief against private parties acting under color of federal law may exist, we must nonetheless reject McNally's *Bivens* argument. It is elementary that, as a precondition to any ultimate success under the "implied remedy" of *Bivens,* the plaintiff must demonstrate a deprivation of some constitutional right. The pretrial publication of non-public portions of the psychiatric report suggests the possible infringement of two constitutional guarantees: (1) the right to a fair trial before an impartial jury and (2) the right to privacy. The complaint fails to demonstrate such deprivation.

### 1. Fair Trial

▆▆▆ In order to secure relief for the deprivation of the right to a fair trial, McNally must demonstrate that the alleged improper conduct in fact had that result. *See Rosenberg v. Martin,* 478 F.2d 520, 525 (2d Cir.), *cert. denied,* 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973). This issue, however, has already been decided adversely to him in the prior federal criminal prosecution and appeal. *United States v. McNally, supra,* 485 F.2d at 402–05. It is well established that prior criminal proceedings can work an estoppel in a subsequent civil proceeding, so long as the question involved was "distinctly put in issue and directly

determined" in the criminal action. *See Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 568–69, 71 S.Ct. 408, 414, 95 L.Ed. 534, 544 (1951); *Williams v. Liberty,* 461 F.2d 325, 327 (7th Cir. 1972); *Kauffman v. Moss,* 420 F.2d 1270, 1274 (3d Cir.), *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970). Moreover, although it is generally the case that the estoppel effect is sought by the government acting as a plaintiff, the "rule is not changed by the fact that the action is brought by the person convicted in the prior criminal action * * *." *Willard v. United States,* 422 F.2d 810, 812 (5th Cir.), *cert. denied,* 398 U.S. 913, 90 S.Ct. 1714, 26 L.Ed.2d 76 (1970). *See generally* 1B J. Moore, Federal Practice ¶ 0.418[1] (2d ed. 1974). McNally cannot now litigate again the fairness of his criminal trial. *See Rosenberg v. Martin, supra,* 478 F.2d at 525–26.

### 2. Privacy

▆▆▆ The constitutional right of privacy is not to be equated with the common law right recognized by state tort law. Thus far only the most intimate phases of personal life have been held to be constitutionally protected. *See, e. g., Roe v. Wade,* 410 U.S. 113, 152–54, 93 S.Ct. 705, 726, 35 L.Ed.2d 147, 176 (1973); *Eisenstadt v. Baird,* 405 U.S. 438, 453–54, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349, 362 (1972); *Stanley v. Georgia,* 394 U.S. 557, 564–65, 89 S.Ct. 1243, 1247, 22 L.Ed.2d 542, 549 (1969); *Griswold v. Connecticut,* 381 U.S. 479, 484–86, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510, 514 (1965). Applying this limited doctrine of constitutional privacy, the federal courts have generally rejected efforts by plaintiffs to constitutionalize tortious invasions of privacy

---

8. Other federal courts have split over whether similar violations of the First Amendment or the due process guarantees of the Fifth Amendment also give rise to private damage actions. *Compare States Marine Lines, Inc. v. Shultz,* 498 F.2d 1146, 1157 (4th Cir. 1974) (Fifth Amendment); *United States ex rel. Moore v. Koelzer,* 457 F.2d 892, 894 (3d Cir. 1972) (dictum; Fifth Amendment); *Gardels v. Murphy,* 377 F.Supp. 1389, 1398 (N.D.Ill.1974) (First Amendment); *Butler v. United States,* 365 F.Supp. 1035, 1040 (D.Hawaii 1973) (First Amendment), finding a cause of action, *with Archuleta v. Callaway,* 385 F.Supp. 384, 388 (D.Colo.1974) (Fifth Amendment); *Smothers v. Columbia Broadcasting System, Inc.,* 351 F.Supp. 622, 626 (C.D.Cal.1972) (First Amendment), finding no cause of action. *See generally Greenya v. George Washington University,* 167 U.S.App.D.C. 379, 512 F.2d 556, 562 n. 13, *cert. denied,* 423 U.S. 995, 96 S.Ct. 422, 46 L.Ed.2d 369 (1975).

involving less than the most intimate aspects of human affairs.[9]

Whatever the scope of the constitutional right of privacy in terms of the dissemination of information by one person regarding another person, it is clear that "the interests in privacy fade when the information involved already appears on the public record." *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 494–95, 95 S.Ct. 1029, 1046, 43 L.Ed.2d 328, 349 (1975). The Supreme Court explicitly held in *Cox Broadcasting* that:

> Public records by their very nature are of interest to those concerned with the administration of government, and a public benefit is performed by the reporting of the true contents of the records by the media. The freedom of the press to publish that information appears to us to be of critical importance to our type of government in which the citizenry is the final judge of the proper conduct of public business. In preserving that form of government the First and Fourteenth Amendments command nothing less than that the States may not impose sanctions for the publication of truthful information contained in official court records open to public inspection.

420 U.S. at 495, 95 S.Ct. at 1046, 43 L.Ed.2d at 349. *See also Lamont v. Commissioner of Motor Vehicles,* 269 F.Supp. 880, 883–84 (S.D.N.Y.), *aff'd,* 386 F.2d 449 (2d Cir. 1967), *cert. denied,* 391 U.S. 915, 88 S.Ct. 1811, 20 L.Ed.2d 654 (1968).

McNally complains that portions of the confidential psychiatric report which were not read in open court were published in the November 15, 1972, news article. These portions concerned findings that McNally was an "anti-social type", with a possible "underlying paranoid process", and quoted McNally's statement to psychiatrists that he was "a nice decent guy". Any intrusion upon privacy posed by the public disclosure of these phrases must be assessed in the context of the public record regarding McNally's mental condition. On July 24, 1972, McNally's defense counsel filed a "Motion for Judicial Determination of Defendant's Mental Competency", including statements that counsel had reasonable cause to believe McNally to be insane or otherwise mentally incompetent and not criminally responsible, and reciting a history of psychiatric problems that formed the basis for this belief. On July 31, 1972, Judge John K. Regan of the Eastern District of Missouri entered an order for psychiatric examination of McNally, stating that it appeared that McNally "may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings * * * and * * * may have been mentally incompetent at the time of the offense alleged * * *." In the hearing on November 5, 1972, Judge Regan read portions of the resultant psychiatric report in open court, including a statement that McNally "suffered from a severe personality disorder", in holding that McNally was competent to stand trial. The District Judge could have read the entire report into the record at that hearing. *See* 18 U.S.C. § 4244.

These facts indicate that substantial information regarding McNally's mental competency was a matter of public record and that the newspaper article contained little if anything not generally disclosed in open court. Due to the public nature of the

---

9. *See, e. g., Tosh v. Buddies Supermarkets, Inc.,* 482 F.2d 329 (5th Cir. 1973) (furnishing of arrest information to those who have legitimate need and interest therefor); *Rosenberg v. Martin,* 478 F.2d 520 (2d Cir.), *cert. denied,* 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973) (furnishing of arrest information regarding criminal suspect to news media); *Baker v. Howard,* 419 F.2d 376 (9th Cir. 1969) (publication by police of charges of criminal conduct, after concluding that plaintiff had not in fact committed the crime); *Felber v. Foote,* 321 F.Supp. 85 (D.Conn.1970) (statute requiring physician to report drug dependent persons); *Travers v. Paton,* 261 F.Supp. 110 (D.Conn. 1966) (television broadcast of secretly filmed parole hearing). *Compare York v. Story,* 324 F.2d 450 (9th Cir. 1963), *cert. denied,* 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964) (violation of constitutional privacy found where police forced a female assault complainant to be photographed in indecent postures and circulated these pictures among officers).

information contained in the article, defendants' publication thereof does not support a claim for invasion of any constitutional right of privacy.

## C.

 McNally also sought relief from Pulitzer and Gest by asserting as a diversity claim the tort of public disclosure of private facts, one of the four separate torts represented by the catch-phrase "invasion of privacy".[10] Missouri law, which governs this diversity claim,[11] recognized the tort of "invasion of privacy" as early as 1911, *Munden v. Harris,* 153 Mo.App. 652, 659–60, 134 S.W. 1076, 1078–79 (1911), and specifically recognizes an action in tort for the public disclosure of private facts. *See Langworthy v. Pulitzer Publishing Co.,* 368 S.W.2d 385, 389–90 (Mo.1963); *Barber v. Time, Inc.,* 348 Mo. 1199, 1207–08, 159 S.W. 291, 295–

96 (1942); *Williams v. KCMO Broadcasting Div.-Meredith Corp.,* 472 S.W.2d 1, 3 (Mo. App.1971).

The generally recognized elements of the tort of public disclosure of private facts are (1) the publication, (2) absent any waiver or privilege, (3) of private matters in which the public has no legitimate concern, (4) such as to bring shame or humiliation to a person of ordinary sensibilities. *See* W. Prosser, Handbook of the Law of Torts § 117, at 810–12 (4th ed. 1971); *Langworthy v. Pulitzer Publishing Co., supra,* 368 S.W.2d at 389–90; *Williams v. KCMO Broadcasting Div.-Meredith Corp., supra,* 472 S.W.2d at 3–4.

Our previous discussion of McNally's constitutional privacy claim is also dispositive of the diversity tort claim: the facts publicized were matters of public record [12] and comprised information in which the public had a legitimate concern.[13] McNally has

---

**10.** *See* Restatement (Second) of Torts §§ 652A–652E (Tent. Draft No. 13, 1967). The four privacy torts are: unreasonable intrusion upon the seclusion of another (§ 652B); appropriation of the name or likeness of another (§ 652C); public disclosure of the private life of another (§ 652D); and publicity which places another in a false light before the public (§ 652E). The same categorization is suggested in W. Prosser, Handbook of the Law of Torts § 117 (4th ed. 1971).

**11.** In a diversity action, the choice of law rules of the forum state apply. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477, 1480 (1941). In *Kennedy v. Dixon,* 439 S.W.2d 173 (Mo. 1969), the Supreme Court of Missouri adopted the Second Restatement's "most significant relationship" approach for choice of law problems in torts. *See* Restatement (Second) of Conflict of Laws § 145 (1971). Section 152 of the Second Restatement provides that, unless some state has more significant contacts, "the local law of the state where the invasion [of privacy] occurred determines the rights and liabilities of the parties". When the essence of the privacy tort is the public disclosure of private facts, the place of invasion is the state "where the complained-of matter was communicated to a person other than the plaintiff." Restatement (Second) of Conflict of Laws § 152, comment c (1971).

**12.** Restatement (Second) of Torts § 652D, comment c (Tent. Draft No. 13, 1967) provides:

There is no liability when the defendant merely gives further publicity to information

about the plaintiff which is already public. Thus there is no liability for giving publicity to facts about the plaintiff's life which are matters of public record * * *.

**13.** As the Missouri Supreme Court recognized in *Barber v. Time, Inc.,* 348 Mo. 1199, 1206, 159 S.W.2d 291, 295 (1942), "establishing conditions of liability for invasion of the right of privacy is a matter of harmonizing individual rights with community and social interests." *See Langworthy v. Pulitzer Publishing Co.,* 368 S.W.2d 385, 389–90 (Mo.1963). The benchmark of this harmonizing analysis is that "where the publication concerns a matter of legitimate public interest, there is no cause of action for invasion of privacy." *Williams v. KCMO Broadcasting Div.-Meredith Corp.,* 472 S.W.2d 1, 4 (Mo.App.1971). "[C]omplaints concerning crime and subsequent police action and the apprehension of persons responsible therefor have been held to be matters of proper public concern by [the Missouri] Supreme Court * * *." *Id.*

The public has a strong interest in enforcement of the criminal laws. Moreover, the sanity and mental competence to stand trial of an accused aircraft hijacker are also matters of legitimate public concern. Disclosures relevant to these matters are clearly within the public interest. Since the contested publication does not amount to an invasion of constitutional privacy or a tortious public disclosure of private facts, we need not consider the constitutional issues suggested in *Time, Inc. v. Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). *Cf. Cox Broadcasting Corp. v. Cohn,*

failed to allege essential elements of a claim in tort for public disclosure of private facts.

### D.

■ We reiterate that "[a]rticles of criminal proceedings should properly emanate from the record and not from putative documents leaked or proffered by the parties." *United States v. McNally, supra,* 485 F.2d at 404. However, the *manner* in which information is acquired is not relevant in assessing whether the public disclosure of private facts constitutes an actionable invasion of privacy. *See Pearson v. Dodd,* 133 U.S.App.D.C. 279, 410 F.2d 701, 705–06, *cert. denied,* 395 U.S. 947, 89 S.Ct. 2021, 23 L.Ed.2d 465 (1969).[14]

This is not to say that conduct of newspaper publishers and reporters toward a suspected criminal may never constitute a violation of a constitutional right of privacy or tortious disclosure of private facts. We simply hold that a plaintiff is precluded from asserting an action under the *Bivens* rationale or in tort which seeks to hold a defendant liable for the publication of allegedly private facts which are already a matter of public record and which are within the legitimate public interest.

The judgment of the District Court is affirmed.

420 U.S. 469, 494–95, 95 S.Ct. 1029, 1046, 43 L.Ed.2d 328, 349 (1975). *See generally,* W. Prosser, Handbook of the Law of Torts § 118, at 823–27 (4th ed. 1971).

**14.** Moreover, although the manner in which information is obtained may be relevant in assessing whether the privacy tort of *intrusion* has been committed, the law in this developing area seems to be that a newspaper does not commit intrusion by its mere receipt of tortiously obtained private facts, even when the newspaper has actual knowledge of such impropriety. *See Pearson v. Dodd,* 133 U.S.App. D.C. 279, 410 F.2d 701, 705, *cert. denied,* 395 U.S. 947, 89 S.Ct. 2021, 23 L.Ed.2d 465 (1969).