**Thomas SHORTBULL**

v.

**Stanley LOOKING ELK, Elijah Whirlwind Horse, James Mousseau, Ivan Bettelyoun, Marvin Amiotte, Gerald "Jump" Big Crow, Lyman Red Cloud, Delores Whitehead, Edgar High Whiteman, Gilbert Matthews, Dave Brewer and Jerry Matthews.**

No. Civ. 80–5035.

United States District Court,
D. South Dakota.

Feb. 19, 1981.

Ramon Roubideaux, Rapid City, S. D., for plaintiff.

Dennis Hill, Rapid City, S. D., for defendants.

## MEMORANDUM OPINION

BOGUE, Chief Judge.

This suit is brought under 42 U.S.C. § 1985(3).[1] It is presently before this Court on a motion for summary judgment made by the Defendants.

The case arises out of a dispute concerning the primary and general elections for the office of Tribal President of the Oglala Sioux Tribe. Plaintiff charges that a conspiracy on the part of the Defendants in violation of 42 U.S.C. § 1985(3) led to his name not being placed on the ballot for the primary election. To fully understand Plaintiff's allegations it is necessary to trace the facts leading up to the tribal elections.

On January 9, 1980, Plaintiff Thomas Shortbull filed his nominating petitions for the office of Tribal President. Even though Plaintiff's petitions apparently contained a sufficient number of names to meet the tribe's requirements for a presidential candidate, the tribal election board failed to take any action in regard to Plaintiff's nominating petitions after receipt of

---

1. If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

them. The reason for the board's refusal to certify Plaintiff as a candidate was that he is not an enrolled member of the Oglala Sioux Tribe.[2] After several tribal meetings and pleas by Plaintiff that he be certified as a candidate, on January 24, 1980, the Tribal Council adopted a resolution directing the tribal election board to certify Plaintiff as a candidate for the upcoming tribal election. However, on January 29, 1980, a resolution was adopted by the Tribal Council which provided for the "Tribal Council body to uphold the Constitution and By-laws and Election Ordinance, and also uphold any decision of the Election Board."

On January 30, 1980, H. Clyde Red Shirt, Chief Judge of the Tribal Court, ordered the Election Board to certify Plaintiff as a candidate and place his name on the February 5 primary election ballot. On February 1, 1980, Red Shirt held several tribal officials in contempt for failure to implement his order regarding the placement of Plaintiff's name on the ballot. He ordered these officials arrested. On this same day, the Tribal Council removed Judge Red Shirt from office and Judge Delores Whitehead quashed his previous orders. Furthermore, the Oglala Sioux Tribal Appeals Court stayed execution of Red Shirt's orders of February 1, 1980. Also on February 1, 1980, the election board notified Plaintiff that he was not eligible to run for tribal president because he was listed on tribal records as an N.E.

On February 4, 1980, Red Shirt ruled that he was still Chief Judge and had arrest warrants reissued for those persons he had held in contempt of court. He also ordered postponement of the February 5 primary election. On this same day, Judge Whitehead quashed Red Shirt's arrest warrants and ordered that Red Shirt's contempt citations of February 1 be purged. The primary election was held on February 5 as scheduled without Plaintiff's name on the ballot.

Plaintiff subsequently filed a suit in this Court on February 11, 1980. That suit, which named various tribal officials as defendants, was brought under 42 U.S.C. § 1985(3) and 42 U.S.C. § 1983. In it, Plaintiff asked for damages and for this Court to declare the acts of the Defendants unlawful and to enjoin Defendants from taking such action in the future. Plaintiff subsequently filed a motion for a temporary restraining order attempting to enjoin the tribal general election which was scheduled for March 11, 1980.

On March 7, 1980, the Honorable Donald J. Porter denied Plaintiff's motion for a temporary restraining order and dismissed Plaintiff's complaint.[3] Judge Porter's dismissal of the complaint in the earlier case was primarily based on two factors. First, Plaintiff had failed to allege that the Defendants' alleged illegal acts were carried out in order to further their own cause. *See Indian Political Action Committee v. Tribal Executive Committee*, 416 F.Supp. 655 (D.Minn.1976). Secondly, the complaint was dismissed because Plaintiff had failed to show he had exhausted his tribal remedies.

Plaintiff filed the complaint in the instant action on March 17, 1980. This action names as defendants Judge Whitehead, the tribal president, the members of the tribal election board, the members of the tribal executive committee, two tribal appellate judges and two tribal attorneys. Plaintiff claims that these Defendants conspired to deprive him of his right to vote and run for office in violation of § 1985(3).

There are numerous similarities between this suit and Plaintiff's prior suit, however, Plaintiff made sufficient changes in his complaint so as to lead this Court to deny an earlier motion to dismiss filed by the Defendants. After presenting the Court with Plaintiff's deposition and accompanying exhibits, Defendants have renewed their motion to dismiss and have asked this

---

2. Plaintiff is registered in the tribal records as a non-enrolled member. Such a person is commonly referred to as an N.E.

3. Although the earlier case was filed with this Court, due to scheduling difficulties, the matter was transferred to the Central Division of the District of South Dakota.

Court to consider it a motion for summary judgment pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

After reviewing the pleadings, the memoranda of law filed by the parties, and Plaintiff's deposition and the accompanying exhibits, it appears to this Court that there exists no material issues of fact in regard to the question of Plaintiff's right to recover under § 1985(3). Accordingly, summary judgment will be entered in favor of the Defendants.

■ In order to state a claim under § 1985(3) it must be alleged that (1) the Defendants conspired, (2) for the purpose of depriving any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws, that (3) one or more of the conspirators did or caused to be done any act in furtherance of the conspiracy, and (4) as a result, another was injured in his person or property or deprived of having and exercising any right or privilege of a citizen. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971).

Looking at the facts presented to this Court in a light most favorable to Plaintiff, it would seem that Plaintiff has at least raised a factual issue as to whether the acts of the Defendants fell within elements 1, 3 and 4 of the *Griffin* test. However, in regard to element 2 of the *Griffin* test, there is no conceivable set of facts which could support a recovery for the Plaintiff.

"The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin, supra*, at 102, 91 S.Ct. at 1798.

Plaintiff's complaint alleges the following:

"Defendants' actions were motivated by an invidious discriminatory animus toward plaintiff, because of his membership in the class of people classified as 'N.E.' on the official B.I.A. Census rolls and his political opposition to said defendants."

The second portion of this allegation would seem to be directed toward Plaintiff's individual political beliefs. There is no allegation that he is a member of a political group opposed to defendants who are being discriminated against; such as existed in *Means v. Wilson*, 522 F.2d 833 (8th Cir. 1975). Clearly, the discrimination covered by § 1985(3) must be class based[4] and this allegation does not appear to be so. Therefore, as far as discriminatory animus against Plaintiff because of his political beliefs is concerned, no claim under § 1985(3) is stated.

The class which Plaintiff alleges is being discriminated against is the so called N.E.s, non-enrolled tribal members. He claims he is being illegally denied the right to vote and run for office because he is a member of this class. The definition of a class under *Griffin* is not at all clear. The various courts which have considered the question have reached numerous and conflicting results. *See Note*, The Scope of Section 1985(3) since *Griffin v. Breckenridge*, 45 *George Washington L.Rev.*, 39 (1977). There is no question that racially based discrimination is included within § 1985(3). The problem arises when attempting to define "otherwise class-based, invidiously discriminatory animus." *Griffin, supra*, 403 U.S. at 102, 91 S.Ct. at 1798.

In regard to the class question, Plaintiff primarily relies upon *Means, supra*, which held that supporters of a candidate for tribal president constituted a class for the purposes of § 1985(3). In this case we have an entirely different situation.

4. "As we read *Griffin's* language, the requirement means that motivating the conspiracy there must be a discriminatory animus toward a *class*, not toward an individual qua individual." *Carchman v. Korman Corp.*, 456 F.Supp. 730, 734 (E.D.Pa.1978), *aff'd* 594 F.2d 354 (3rd Cir. 1979), *cert. denied* 444 U.S. 898, 100 S.Ct.

205, 62 L.Ed.2d 133 (1979). *See also Lessman v. McCormick*, 591 F.2d 605 (10th Cir. 1979); *McNally v. Pulitzer Publishing Co.*, 532 F.2d 69 (8th Cir. 1976); *McLellan v. Mississippi Power & Light Co.*, 526 F.2d 870 (5th Cir. 1976); *Poirier v. Hodges*, 445 F.Supp. 838 (M.D.Fla.1978).

The N.E. class is composed of Indian people who for various reasons are not enrolled as tribal members.[5] It appears that generally, over the years, the tribe has not allowed N.E.s to vote or run for office. This is the reason Plaintiff was not certified as a candidate for tribal president. Plaintiff claims that this violates § 1985(3).

Plaintiff argues that this Court should let this case go to trial so it can be determined if the tribe can legally exclude N.E.s from participation in tribal elections. The right of an Indian tribe to determine its membership was addressed in the case of *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). That case involved an attack upon a tribal ordinance which denied membership to children of female members who married outside the tribe while extending membership to children of male members who married outside the tribe. In determining not to interfere with the tribe's right to establish its own rules for membership, the Supreme Court quoted favorably from the District Court's opinion:

> To abrogate tribal decisions, particularly in the delicate area of membership, for whatever 'good' reasons, is to destroy cultural identity under the guise of saving it.[6]

■ What we have in this case is a similar situation. Plaintiff wants this Court to interfere with a tribal decision to not permit non-enrolled tribal members to vote or run for office. The *Martinez* case clearly establishes the tribe's right to decide who will be its members. Certainly, therefore, the tribe has the right to decide that it does not want non-enrolled members to vote in its elections or run for its offices. There is no question the reason Plaintiff was not certified as a candidate was because of his status as an N.E. However, in light of *Martinez*, it appears to this Court that the actions of the tribe were not motivated by an invidiously discriminatory animus against Plaintiff because of his status as an N.E.

The requirement that the discrimination be "class-based" is not satisfied by an allegation that there was a conspiracy which affected the interests of a class of persons similarly situated with the plaintiffs. Rather, the complaint must allege facts showing that the defendants conspired against the plaintiffs because of their membership in a class and that the criteria defining the class were invidious. *Harrison v. Brooks*, 519 F.2d 1358 (1st Cir. 1975).

It appears to this Court that there are no facts which could be presented to prove that the criteria defining the N.E. class were invidious or that Plaintiff was unlawfully discriminated against because of his membership in that class. Based on the foregoing, this Court concludes that Plaintiff cannot recover under § 1985(3) and therefore, Defendants' motion for summary judgment will be granted.

There also appears to be a serious doubt as to whether Plaintiff has exhausted his tribal remedies. However, due to the foregoing, the issue of exhaustion need not be addressed in this opinion.

---

**5.** Apparently the reason for Plaintiff being classified as an N.E. is the tribe's belief that Plaintiff's parents were living off the reservation at the time of his birth. Plaintiff argues that he should not be classified as an N.E., but that is not an issue in this lawsuit.

**6.** In addition to determining its own membership, it appears that *Martinez* would stand for the proposition that Indian tribes be given great latitude in regard to the question of eligibility to vote and run for office. Therefore, it would appear that the *Martinez* decision raises serious doubts as to the continued viability of the Eighth Circuit's unfortunate decision in *Luxon v. Rosebud Sioux Tribe of South Dakota*, 455 F.2d 698 (8th Cir. 1972).